Paul ZABOL, Appellant,

v.

Manuel LASKY and Naomi Lasky, Respondents.

No. 56978.

Supreme Court of Missouri, Division No. 2.

Sept. 10, 1973.

**552**

Kohn, Shands & Gianoulakis, Alan C. Kohn, St. Louis, Klamen, Summers, Wattenberg & Compton, Clayton, for plaintiff-appellant.

Shifrin, Treiman, Schermer & Gallop, J. Leonard Schermer, Robert H. Kubie, St. Louis, for defendants-respondents.

STOCKARD, Commissioner.

In plaintiff's suit for $210,500 based on quantum meruit for services rendered, the trial court sustained defendants' motion for a directed verdict on plaintiff's opening statement, and this appeal followed. We reverse.

Plaintiff alleged in his petition that he was a licensed real estate broker, that he furnished services to defendants, Mr. and Mrs. Manuel Lasky, which resulted in the sale by them of property at 121 South Meramec, Clayton, Missouri, to the party procured by plaintiff, and that the value of the services was $210,500.

After the jury was sworn an opening statement was made by appellant's counsel. By reason of the conclusion we reach on this appeal it is sufficient to summarize that statement.

Respondents purchased real estate at 121 South Meramec and constructed thereon an office building "around ten stories tall." By May 1963 there were only a few tenants in the building, and appellant entered into an arrangement whereby he was to have an office in a nearby building owned by respondents, and from that office he was to continue to operate his own real estate business but his "primary responsibility" was to obtain tenants for the new building. He made many telephone calls to businesses, and would "follow up by a personal visit" to those who expressed an interest. One business on which he called was the Seven-Up Company, and he there conferred with Mr. Howard Ridgeway, executive vice-president, who expressed an interest in purchasing the building rather

than leasing it. However, at that time respondents were not interested in selling. A proposal presenting three options for the lease of the building were prepared by appellant and sent to Mr. Ridgeway. One option was for a lease of the entire building for a long term, and appellant asked Mr. Lasky, "What will be our arrangement if we should happen to be fortunate enough to interest Seven-Up to the point of occupying all of this space?" Mr. Lasky replied that they should first obtain the lease and that they would then work out the commission. Appellant later called on Mr. Ridgeway who stated that the amount of rent in the proposal was too much, and that he was interested only in purchasing the property and not renting it. In the meantime appellant urged respondents to sell the building because they had had no success in obtaining suitable tenants, and Mr. Lasky did engage in conversations with Mr. Ridgeway concerning the sale of the building. Also, at the instance and request of Mr. Lasky appellant was "to follow-up" those conversations with Mr. Ridgeway. Later Mr. Ridgeway told appellant that "plans were up in the air," and if Seven-Up Company was interested in buying or leasing appellant would be contacted about June of the following year. Shortly thereafter appellant and Mr. Lasky terminated their relationship. In June of 1964 Mr. Ridgeway contacted a real estate broker by the name of Sidney Studt and told him that Seven-Up Company was moving to St. Louis County and to "look into" the "121 South Meramec Building." By operating through a "strawman" a proposed contract for the purchase of the building was prepared, but it was rejected by Mr. Lasky. During the conversations between Mr. Ridgeway and Mr. Studt, Mr. Ridgeway stated that Seven-Up Company would not, as the buyer, pay a commission. The rate for a real estate commission suggested by the Metropolitan Real Estate Board was six percent, and when the sale was completed a commission of $100,000 was paid to Mr. Studt, which was less than

one-half of the suggested commission. Appellant called Mr. Lasky and asked about a commission to be paid to him. At first Mr. Lasky denied that appellant had anything to do with Seven-Up Company, but when reminded that appellant had brought Mr. Ridgeway to the premises he admitted he remembered "something about that," but refused to pay appellant any commission. Appellants' counsel also stated that "other evidence is going to come into this case" about which he had not gone into detail.

The primary purpose of an opening statement is not to test the sufficiency of plaintiff's anticipated evidence, but is to inform the judge and the jury in a general way of the nature of the action so as to enable them to understand the case and to appreciate the significance of the evidence as it is presented. Hays v. Missouri Pacific Railroad Company, 304 S.W.2d 800 (Mo.1957). Courts should be very reluctant to direct a verdict at the close of plaintiff's opening statement, and it should not be done because of the mere failure to state facts sufficient to constitute a submissible case unless counsel affirmatively admits that no additional facts will be shown by the evidence. Butcher v. Main, 371 S.W.2d 203 (Mo.1963).

There are two general situations in which a trial court may direct a verdict on plaintiff's opening statement. The first exists when counsel makes an admission which affirmatively demonstrates as a matter of law that plaintiff has no cause of action or is not entitled to recover on his cause of action. Respondents argue that the facts of this case authorized the trial court to direct a verdict pursuant to this rule. We do not agree. See Hays v. Missouri Pacific Railroad Company, supra, for examples of cases falling within this rule. Counsel made no affirmative admission which established, as a matter of law, that plaintiff did not have a cause of action based on quantum meruit. Neither did he disclose a situation which, as a matter of

law, precluded recovery for some other reason, such as the statute of limitations or public policy.

The second situation in which a directed verdict may be entered on an opening statement is represented by those cases wherein the facts recited in the opening statement, if proved, do not, as a matter of law, constitute enough to make a submissible case to go to the jury. If a verdict was correctly directed in this case, it was pursuant to this rule. However, as stated in Hays v. Missouri Pacific Railroad Company, supra, there are well established and definite principles which narrow the situation in which a verdict may be directed for this reason.

■■■ Counsel is permitted considerable latitude in making an opening statement, both as to what he says and what he does not say. The opening statement is not intended to contain all, or even a major part, of plaintiff's case, and he is not confined in his presentation of evidence to the proof of facts recited therein. "By reason of these well accepted and basically sound principles, it is readily apparent that mere insufficiency of the opening statement to recite facts which show that plaintiff's anticipated evidence would, as a matter of law, present a submissible case, is not of itself standing alone sufficient justification to stop the case at that stage and direct a verdict for the defendant." Hays v. Missouri Pacific Railroad Company, supra at pp. 804–805 of 304 S.W.2d. It is only when it affirmatively appears that the whole of plaintiff's case has been fully and completely set forth in the opening statement, and it *clearly* and *definitely* appears, as a matter of law, that proof of all the facts so recited, together with all reasonable inferences in favor of plaintiff, would not result in a submissible case that a trial court may direct a verdict for defendant in order to avoid the unnecessary and useless procedure of taking testimony which is known in advance to be insufficient. But, this action should be taken only after it *affirmatively* appears that plaintiff's case has

been fully stated and after counsel has been afforded an opportunity, after the motion for a directed verdict has been made, to correct or add to his opening statement.

Admittedly the opening statement in this case left much to be desired. It is vague and indefinite as to the arrangement between appellant and respondents giving rise to an action based on quantum meruit. The original arrangement was that appellant would receive a commission for obtaining tenants to lease portions of the building. However, in the course of that endeavor, appellant contacted and caused the Seven-Up Company to become interested in purchasing the building, and Mr. Lasky directed appellant to follow up on the discussions concerning a sale of the property. Whether there resulted a factual situation whereby under the law of quantum meruit appellant was entitled to compensation would ordinarily be a jury question.

Assuming, however, that it reasonably could be said that from the statement of appellant's counsel a jury issue was not presented, another rule is applicable.

■■■ Plaintiff's petition was based on quantum meruit. As previously noted, a plaintiff is not limited in presenting evidence on the trial to the scope of his opening statement, but that limitation is the issues raised by the pleadings. "Therefore, even though the anticipated evidence recited in plaintiff's opening statement was not sufficient in and of itself to demonstrate that plaintiff would be able to present sufficient evidence to go to the jury, * * * in the absence of an affirmative admission that the facts recited in the opening statement constituted the total of plaintiff's anticipated proof, plaintiff was entitled to present such evidence as [he] had in support of the allegations in [his] petition, and we are not to assume * * * that [he] had none." Hays v. Missouri Pacific Railroad Company, supra at p. 805. In this case, not only was there no affirma-

tive admission that the opening statement constituted the total of plaintiff's anticipated proof, counsel affirmatively stated that there would be "other evidence" which he had not mentioned. Under these circumstances a directed verdict was proper only if the petition failed to state a claim upon which relief could be granted, and there is no contention that the petition was not sufficient.

The judgment is reversed and the cause remanded.

HOUSER, C., concurs.

PER CURIAM:

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

HENLEY, P. J., DONNELLY, C. J., MORGAN, J., and TILLMAN, Special Judge, concur.

FINCH, J., not a member of Division when cause was submitted.