Vernon HANES, Appellant,

v.

BACON SALES COMPANY, White Farm Equipment Company, Dean Machinery Company, and Caterpillar Tractor Company, corporations, Respondents.

No. WD 31199.

Missouri Court of Appeals, Western District.

July 8, 1980.

Thomas O. Pickett, Trenton, for appellant.

C. J. Poirier & Jennifer Gille, Kansas City, for Caterpillar Tractor Co.

David P. Macoubrie and James P. Valbracht, Chillicothe, for Bacon Sales Co.

R. Max Humphreys, Trenton, for White Farm Equipment Co.

Paul L. Wickens and Gwen C. Caranchini, Kansas City, for Dean Machinery Co.

Before KENNEDY, P. J., and PRITCHARD and SWOFFORD, JJ.

KENNEDY, Presiding Judge.

Plaintiff Vernon Hanes appeals from a judgment based upon the direction of a verdict in his damage case against the respondents Bacon Sales Company, White Farm Equipment Company, Dean Machin-

ery Company, and Caterpillar Tractor Company. The trial court, upon the motion of the respondents, directed the verdict after plaintiff's opening statement and before hearing any evidence.

We reverse and remand for further proceedings.

The opening statement by the plaintiff was substantially as follows: Plaintiff Vernon Hanes was a farmer, farming west of Trenton, Missouri. In 1974 he had purchased from defendant Bacon Sales Company at a cost of $20,000 an Oliver model 2255 tractor, manufactured by White Farm Equipment Company. It was delivered in June of that year.

The next year as Hanes' son, Mark, was operating the tractor in putting in their crops, the crank shaft on the tractor broke. It had at this point 322 hours' service.

Plaintiff at the suggestion of Bacon Sales took the tractor to Dean Machinery Company for repairs. Dean Machinery removed the engine and found that the crank shaft was broken.

Dean Machinery called Hanes after two or three weeks to inform him the tractor was ready, but when Hanes arrived for it, they had taken the engine out of the tractor. Two, three or four days later, however, Hanes got another call that the tractor was ready. Son Mark went to the Dean Machinery shop, picked up the tractor and drove it back to the Hanes farm.

Plaintiff Vernon Hanes got on the tractor and noticed immediately that there was too much vibration in it. He called Harold Granneman at the Dean Machinery Company. A few days later, perhaps as long as a week, Granneman and a Caterpillar Tractor representative came to the Hanes farm. The Caterpillar Tractor representative rode the tractor around the field and said, "You're right, there is too much vibration in this machine. I tell you what you do, you finish putting your crop in and when you get done and then you bring it down to Dean's and we will make it right". Hanes replied that he would do that.

Hanes did use the tractor to complete putting his crops in. In June or July he took it back to Dean's. This time Dean's kept the tractor to the end of October or November. When Hanes went to test the tractor, he found that it was vibrating as it had been before. Hanes was told he would have to wait until "this man from White" comes down here.

In a week or so Hanes got another call and once again he went to Dean Machinery Company. The representative from White was there. The representative from White recommended that the back of the tractor engine be tied onto the frame. Hanes protested that the vibration would tear up the tractor, but was assured it would not have that effect.

After Hanes had bought the tractor and before the crank shaft broke, there was a service bulletin issued by White Equipment which said: "Tie these engines down because the engine moves. You can avoid excessive movement by putting this kit on there to keep the back of it from shifting around."

The opening statement goes ahead to describe how the tractor literally shook to pieces as a result of the vibration. At trial time, the tractor had less than 800 hours on it, was worn out and was no longer in use.

Plaintiff's attorney, during the discussion over the motions for directed verdicts, added that Bacon Sales had bolted the engine onto the frame. He also added that Caterpillar "had had trouble with this before". He added that all four defendants had paid for the repairs, and that plaintiff Hanes had been charged nothing.

At the conclusion of the plaintiff's opening statement, all the defendants moved for directed verdicts, which motions were granted as to all of the defendants.

 The direction of a verdict at the close of an opening statement, while not unknown to our cases, is rarely justified. It is not required in an opening statement that it state each and every element necessary to be proved in order to make out a submissible case for plaintiff, nor is it re-

quired that it recite evidence which will sustain each and every element. The opening statement is rather an outline of what the plaintiff expects to prove. *See* MAI 2.01. Some lawyers believe it is advantageous to their cases to recite their evidence in minute detail. Others prefer generally to deal in brevity and paint with a broad brush, giving the jury a birds-eye view of the case. A plaintiff may waive the opening statement. *Schwartz v. Fein*, 471 S.W.2d 679, 680 (Mo.App.1971).

For these reasons, an opening statement is not scrutinized, as is the evidence or the petition, to see whether it presents all the elements and evidence which the plaintiff may be required to present in order to make a submissible case.

■ A directed verdict after an opening statement is only justified where it *affirmatively appears* from the plaintiff's statement of the case that he cannot recover from the defendants. That is not the case here, and the judgment is therefore reversed and the case is remanded to the trial court for further proceedings. *Zabor v. Lasky*, 498 S.W.2d 550 (Mo.1973); *Hays v. Missouri Pacific R.R. Co.*, 304 S.W.2d 800 (Mo.1957).

■ The defendants say that plaintiff Hanes did not in his opening statement make any case against them, and the court was therefore justified in the direction of the verdict. In their argument to the trial court, and in their brief here, they cite the case of *McMahon v. Charles Schulze, Inc.*, 483 S.W.2d 666 (Mo.App.1972). There the owner of an automobile delivered the same to defendant for certain specified servicing and repairs. A week later the car broke down. How it broke down or what caused it to break down are not shown by the opinion. The court concluded that the *evidence* in that case did *not* make a submissible case. Said the court: "They ask us to jump from the fact that certain work was done by defendant to the fact that something went wrong with the car a week later requiring repairs and to allow a jury to decide whether the defendant was negligent. Plaintiffs offered no evidence other than a personal conclusion the original work was performed negligently. They offer no evidence apart from these conclusions that such purported negligence proximately caused the malfunctioning which required subsequent repairs." Id. at 669.

We have no quarrel with that case, but that is not the case which we now have under consideration. In our case, plaintiff Hanes (according to the opening statement) took the tractor to Dean Machinery Company for repairs. When the tractor was returned to him it vibrated when operating. The implication was that it had never vibrated before. The attempts to correct the defect ultimately caused considerable damage to the tractor.

It was Dean Machinery Company who made the repairs, although White Farm Equipment Company, Caterpillar and Bacon Sales all participated in the repairs. Their respective roles are not fully developed in the opening statement. The evidence will develop that and the jury can decide the issues. The plaintiff was not there when the repairs were made; he could not be expected to know the precise negligent act which caused the vibration and consequent damage. If plaintiff's evidence on this point proved the statements made in his opening statement, he would have made a submissible case of negligence by circumstantial evidence. *Weatherford v. H. K. Porter, Inc.*, 560 S.W.2d 31, 33 (Mo.App. 1977); *Williams v. Ford Motor Co.*, 494 S.W.2d 678, 681 (Mo.App.1973); *Brissette v. Milner Chevrolet Co.*, 479 S.W.2d 176, 181–2 (Mo.App.1972); *Plato Reorganized School District No. R–5 v. Intercounty Electric Coop A*, 425 S.W.2d 914 (Mo.1968); *Citizens Bank of Festus v. Missouri Natural Gas Co.*, 314 S.W.2d 709 (Mo.1958); *Maybach v. Falstaff Brewing Corporation*, 222 S.W.2d 87 (Mo.1949).

Defendants argue, however, that plaintiff's petition did not undertake to state a cause of action for negligent repair, but rather for breach of warranty. It then argues that the opening statement must show entitlement to relief under a breach of warranty theory, and a statement which might show negligent repair will not do.

It is true that the petition does not directly state that the repairs were negligently made. It does say that Dean Machinery Company "proceeded to install various parts in the engine in an attempted repair of said engine; that thereafter, plaintiff received the tractor from Dean Machinery Company; that when said tractor was received from defendant Dean Machinery Company, excessive and violent vibrations were present and continued to be present and still continue to be present." The petition then goes ahead to describe the damage to the tractor which resulted from the excessive vibrations. Then the petition says that "as a direct and proximate result of the separate and concurring breach of warranty of defendants as aforesaid, and the flaws in said tractor as set forth above, plaintiff was caused to sustain damage in the following respects", and so on. It will be seen, therefore, that, although not using the conclusory word "negligence" or "negligent", the *facts alleged* suggest a cause of action for negligent repair. By interlining those words in one form or another at two or three separate places in the petition, the petition would state a claim for relief on that theory. Amendments to petitions, even during trial, are authorized by court rule and are quite usual. Supreme Court Rule 55.33(b). It would have been hard for Dean Machinery to resist such an amendment on the ground of surprise, for one of the interrogatories as submitted by Dean Machinery to the plaintiff asks plaintiff to state "those things that he contends that Dean did which contributed to the damages". The plaintiff's answer was: "They worked on it. They were negligent, careless, reckless, or in some manner put the engine in such a condition that it did not run properly but vibrated excessively." For that matter, the question of negligent repair might have been tried in the case by express or implied consent of the parties, in which case Supreme Court Rule 55.33(b) says that the issue should "be treated in all respects as if it had been raised in the pleadings". Who knows what course the trial might have taken?

With respect to any cause of action based upon express or implied warranties, it is true that the facts stated in the opening statement do not affirmatively establish implied or express warranties on the part of any of the defendants. Still, on the other hand, the opening statement does not foreclose a cause of action on that theory. Within the framework of the facts stated in the opening statement, and entirely consistently therewith, evidence can be imagined which would make a submissible case of breach of implied warranty under § 400.2–314 or § 400.2–315, RSMo 1978. 1 Uniform Laws Annotated, U.C.C. 2–314 notes 74–79, U.C.C. 2–315 note 31. As to whether services such as those performed by the defendants in their attempts to repair the tractor could be held to carry an implied warranty of fitness or merchantability, that is a question which we do not reach here. *But see Pepsicola Bottling Co. v. Superior Burner Service Co.*, 427 P.2d 833 (Alaska 1967); *Samuelson v. Chutich*, 187 Colo. 155, 529 P.2d 631 (Colo. banc 1974); *Lee v. C. & P. Service Corp.*, 363 So.2d 586 (Fla.App.1978).

The judgment is reversed and remanded to the trial court for further proceedings.

All concur.