**CHALET APARTMENTS, INC.,**
Plaintiff-Appellant,

v.

**FARM & HOME SAVINGS ASS'N, INC.**
**and David B. Lacks,**
Defendants-Respondents.

No. 45467.

Missouri Court of Appeals,
Eastern District,
Division Two.

Sept. 20, 1983.

Rudy D. Beck, St. Charles, for plaintiff-appellant.

Andrew Rothschild, St. Louis, for defendants-respondents.

Gerre S. Langton, Evans & Dixon, St. Louis, for defendant-respondent David B. Lacks.

GAERTNER, Judge.

Plaintiff appeals from a directed verdict in favor of defendants in a suit for fraud and legal malpractice. Appellant is Chalet Apartments, Inc. (Chalet), developer of a 38 unit apartment complex in St. Louis County. Defendants-Respondents are Farm and Home Savings Association (Farm & Home), who foreclosed in March of 1973 on a $435,100 loan for the apartment project, and David Lacks, an attorney employed by Chalet. Chalet alleged that Farm & Home fraudulently concealed an alternative to foreclosure involving assignment of the loan to the Housing and Urban Development Authority (HUD) which insured the loan and that Lacks was negligent in not advising Chalet of the assignment possibility.

Plaintiff's sole witness at the trial was Joseph Frager, principal stockholder and contractor for Chalet. At the close of Frager's direct testimony both defendants moved for a directed verdict. The trial judge expressed his opinion that such motions were premature. However, during the ensuing discussion between the court and counsel, plaintiff's attorney admitted that he had no additional "substantive evidence" to offer. He told the court that one prospective witness would testify as to the procedures followed by HUD if the mortgage had been assigned to it by defendant Farm & Home. His other witness was an attorney who was expected to express opinions based upon testimony already on the record. The following colloquy sums up the entire discussion:

"The Court: So, what you're telling the Court is that in substance is that based upon the way that the plaintiff has testified, you can no longer make a submissible case, and to put on the additional witnesses that you have would really merely be a charade to put on additional evidence but that wouldn't be substantive in the standpoint of making a submissible case for the jury.

Mr. Denlow: All I can say, Your Honor, is all the substantive evidence is being provided by Mr. Frager as now stands."

The court thereupon sustained the motion of defendants for directed verdicts. On appeal, Chalet first attacks the timeliness of the sustention of the motion before the close of plaintiff's case. A motion for a directed verdict may be granted after plaintiff's opening statement where it affirmatively appears from the plaintiff's statement of the case that he cannot recover from the defendants. *Hanes v. Bacon Sales Co.*, 602 S.W.2d 50, 52 (Mo.App.1980). Such action should not be taken because of mere failure to state facts sufficient to constitute a submissible case "unless counsel affirmatively admits that no additional facts will be shown by the evidence." *Zabol v. Lasky*, 498 S.W.2d 550, 553 (Mo.1973). The rationale underlying this rule is stated in *Hays v. Missouri Pacific R.R. Co.*, 304 S.W.2d 800, 803 (Mo.1957), "if counsel admits he is unable to prove facts essential to a recovery, or to disprove facts fatal to a recovery, there is no need of going to the trouble and expense of hearing evidence which, it is known in advance will be insufficient." Although referring to it as a "commendable practice," 304 S.W.2d at 803, the *Hays* court cautions that directing a verdict at the conclusion of plaintiff's opening statement should be done only "after counsel has been afforded an opportunity, after the motion for directed verdict has been made, to correct or add to his opening statement." 304 S.W.2d at 805.

We see no significant difference as to timeliness of a motion for a directed verdict sustained after opening statement or after partial presentation of plaintiff's case if the circumstances justify the direction of a verdict for the purpose stated in *Hays*. Procedurally, all of the requirements and caveats of the cases cited above were satisfied when plaintiff's attorney conceded this additional evidence did not go to the substance of the case and that all of the substantive evidence had been adduced. It is apparent from his statements to the court that the testimony of one witness would be concerned with what a third party, HUD, might do if Farm & Home had taken a different course than foreclosure.

Such testimony, entirely speculative and hypothetical, would not even be admissible over objection and not probative if admitted without objection. As to the proposed testimony of the lawyer expert witness, plaintiff's attorney conceded this would be based upon the evidence already adduced and would not add to the "record as it now stands" so as to enable him to make a submissible case against defendant Lacks. The deficiency in the record as it then stood, as shall be more fully developed below, related to the absence of proof of causal relationship between the alleged negligence and the claimed damage. We cannot conceive of how the testimony of a witness called as an expert in a legal malpractice case, which testimony was admittedly to be based only upon evidence already adduced and not upon any personal knowledge of the facts, could possibly serve to prove such a causal connection.

Further, appellant presents this point purely in the abstract. Nowhere in its brief does it attempt to suggest what additional evidence it might have offered which might have rendered the case submissible as to either defendant. It does not even purport wherein and why the timing of the court's action constituted reversible error. Under the circumstances evident from the record in this case, appellant's point relating to timeliness has no merit.

■ Nor do we find substantive error in the sustaining of the motions for directed verdict. Chalet contends the testimony of Frager made a submissible case of fraudulent concealment against Farm & Home. In support of this contention, Chalet directs our attention to Frager's testimony regarding a meeting with George McDonald, an officer of Farm & Home which occurred two days after the foreclosure. Frager testified that at this meeting he was advised for the first time that HUD could have extended the foreclosure. Then he added "but it was at McDonald's option." Failure to disclose this possibility at an earlier date, Chalet contends, constitutes fraud. In order to develop this theory, Chalet describes its relationship with Farm & Home as a confidential relationship, thereby implying a duty upon Farm & Home to tell Frager how Chalet might avoid the consequences of his default in mortgage payments. This tenuous argument simply fails to hold water. The evidence describes nothing more than normal dealings between a borrower and a mortgage lender—a debtor and secured creditor relationship. We know of no authority and are cited to none which requires a creditor to advise his debtor of possible means of evading the consequences of his default. Nor does any such duty arise from the fact that the loan was insured by HUD, an agency with which Farm & Home had more familiarity than did Frager.[1]

The dispositive fact, however, is Frager's testimony that an extension was at McDonald's, that is Farm & Home's, option. The clear import of this testimony is that the purported concealment or non-disclosure of HUD practices and procedures related to a matter not within HUD's control, but within the sole control of the party charged with the concealment. Farm & Home had foreclosed. The only possible conclusion to be drawn from this fact is that it, despite its knowledge of the possibility of assignment to HUD, had exercised its discretion and control over that possibility in a negative manner. Therefore, even if some duty of disclosure could be imposed upon Farm & Home, its failure to satisfy such a duty would be meaningless. In no way could the non-disclosure of HUD policies be said to have had any effect upon the decision of Farm & Home not to assign the mortgage. The essential element of causal connection between the defendants' alleged wrongdoing and the plaintiff's injury is missing.

---

1. This is not to say that Frager was totally unfamiliar with the financial arrangements involved in real estate transactions. The evidence shows he had spent 27 years selling real estate and had previously developed a successful apartment complex which he continued to operate under a name other than Chalet Apartments, Inc.

■ This same deficiency exists with regard to Chalet's claim against defendant Lacks. Assuming the lawyer-client relationship between Chalet and Lacks extended to the matter of foreclosure,[2] there is no evidence outside of speculation and conjecture that Lacks was negligent or that any omission on his part caused or contributed to cause the foreclosure.

Although Chalet's petition charges Lacks with negligence regarding several different matters, the only issue briefed and argued on appeal relates to his representation of Chalet in connection with the foreclosure. All other allegations are therefore not before us for our consideration. *School District etc. v. TransAmerica Ins. Co.,* 633 S.W.2d 238, 253 (Mo.App.1982).

The petition charges Lacks with negligence in advising plaintiff that there was no alternative to foreclosure. In its brief, Chalet maintains the following testimony of Frager constitutes evidence showing a breach of duty by the attorney.

"Q. Did Mr. Lacks ever give you any advice on how to pursue the matter?

A. Specifically, I don't recall.

Q. Okay. Did he discuss any advice about how to save your project in any way?

A. I don't recall that he did.

Q. What did he discuss with you?

A. All I knew that he was doing was having contacts with Mr. Duggan of HUD and Mr. McDonald at Farm & Home.

Q. Did he ever have discussions with you about what you should do?

A. No. He did not.

Q. Did you ever go to Mr. Lacks and ask him for assistance to avoid foreclosure?

A. I thought he was giving it to me automatically, because, as I said, he was in contact with the people who could do it if they wanted to, and that's Mr. McDonald, who had the option to do whatever it was, and he was in contact with him.

. . .

Q. After Mr. Lacks' conferences with Farm & Home and/or HUD, did he ever report to you of the outcome?

A. He reported and we had discussions about the subject of Mr. McDonald or HUD with reference to the coming foreclosure, but he never said anything beyond that."

The inadequacy of this testimony, and we find nothing more in our own search of the transcript, to make a submissible case on the pleading against Lacks is obvious. There is no evidence that there was an alternative to foreclosure. The option to foreclose or not to foreclose was with McDonald, the officer of Farm & Home. Whether Lacks reported to his client after the conference that McDonald was adamant about foreclosure and therefore there was no alternative, or whatever he may have reported, is left to pure speculation. The testimony falls far short of substantiating the allegation that Lacks advised there was no alternative to foreclosure, much less that he was negligent in so doing. Moreover, Chalet's contention here is that if Lacks had advised Frager there was an alternative, Frager would have conducted himself differently. We are not told in what respects his conduct would have been altered. As to whether McDonald and Farm & Home would have responded to this different approach by changing the decision to foreclose also remains in the realm of speculation and conjecture.

■ Chalet also argues that its case against Lacks would have been stronger if the court had not erroneously sustained an objection to a question addressed to Frager relating to what Lacks had reported to him about attempts to resolve this problem, on the grounds it was leading and suggestive. As can be seen from the testimony set forth above, the same question was subsequently asked in different form and it was answered. Therefore, the record shows no prejudice which might cause us to find an abuse

**2.** The evidence shows Lacks was first retained with regard to a legal malpractice action arising from matters involving Mr. Frager's other apartment complex. However, there was evidence that Lacks performed some legal services in connection with the pending foreclosure and that he was aware Chalet was in default on its mortgage payments.

of the trial court's discretion in approving or disapproving leading questions. *Sheets v. Kurth,* 426 S.W.2d 103, 104 (Mo.1968).

While we do not intend to encourage the premature determination of trials before the conclusion of plaintiff's presentation of evidence, we are satisfied that no injustice occurred here. The court's action was neither arbitrary nor precipitous. During a discussion covering five pages of the transcript, counsel was given every opportunity to suggest to the court additional evidence he might be able to offer in order to substantiate the proof of the allegations of the petition. He admitted he had no further substantive evidence. Only then did the court overcome its expressed reluctance and invoke the principle laid down in *Hays v. Missouri Pacific R.R. Co.,* supra at 803, of avoiding "the trouble and expense of hearing evidence which, it is known in advance, will be insufficient." Public criticism so prevalent today that judicial proceedings are unnecessarily prolonged and expensive can never serve as excuse for precipitous action resulting in injustice. But such is not the case here.

The judgment is affirmed.

SNYDER, P.J., and DOWD, C.J., concur.