**In the Matter of Helen S. CRIST, Disabled and Incapacitated,**

**Edith C. Breding, Petitioner-Respondent,**

**Noel Smith, Petitioner-Appellant.**

No. 51920.

Missouri Court of Appeals, Eastern District, Northern Division.

July 7, 1987.

C. Christy Barton, Jefferson City, for Noel Smith.

Mary L. Rhodes, Hannibal, for Edith C. Breding.

James H. Snowden, Quincy, Ill., for Helen S. Crist.

REINHARD, Judge.

Petitioner Noel Smith appeals that portion of the trial court's order appointing the public administrator as guardian and conservator and denying his petition for appointment. We reverse and remand.

Edith C. Breding filed a petition requesting she be appointed as guardian and conservator for Helen S. Crist, an 83–year-old widow. Shortly thereafter, Mr. Smith filed his petition requesting the court appoint him. Both petitioners agreed that a guardian and conservator was needed. In his petition, Mr. Smith identified himself as Mrs. Crist's brother and alleged that he was entitled to preference over Mrs. Breding because she "is not related to [Mrs. Crist]." The trial court appointed attorney James Snowden as guardian ad litem for Mrs. Crist, and the parties waived a jury trial.

Mrs. Breding's evidence consisted of her testimony and a copy of a medical report from Mrs. Crist's physician. Mrs. Breding is the stepdaughter of Mrs. Crist. Her father married Mrs. Crist when Mrs. Breding was 23; Mrs. Breding married two years later. Mrs. Crist remained married to Mrs. Breding's father until his death in 1972. Mrs. Breding described her relationship with Mrs. Crist, recounted assistance she had provided Mrs. Crist in the past, and expressed her willingness and ability to be guardian and conservator. She stated she visited Mrs. Crist at a nursing home in Canton, Missouri, once a week. Mrs. Breding said she presumed Mr. Smith to be capable of being Mrs. Crist's guardian and conservator, but she would rather be appointed. She testified that "[a]llegedly, her brother [petitioner Smith] has power of attorney." From Mrs. Breding's testimony, we discern that Mrs. Crist has at least one other living relative, a sister.

The guardian ad litem testified about his conversation with Mrs. Crist at the nursing home and his observations about her condition. He stated that "[a]s much as she could understand the situation, she indicated to me that she had no objection and that she felt she did need help to—to handle her affairs." The guardian ad litem said Mrs. Crist understood his reference to Mr. Smith and Mrs. Breding and she considered both to be "quite trustworthy."

Petitioner Smith's evidence consisted of his own testimony and that of two other witnesses. Mary Vaughn, who was a neighbor of Mrs. Crist for more than 15 years and who worked at the nursing home where Mrs. Crist had resided since December 1985, testified about Mrs. Crist's present and previous mental condition and work that Mr. Smith and his wife had done at Mrs. Crist's house. Eleene Glascock testified she had known Mrs. Crist "some 40 years" and had prepared income tax

returns for her. She said that, for tax years 1983 and later, Mr. Smith would gather the necessary information and send it to her.

Petitioner Smith testified that he had been taking care of Mrs. Crist's business affairs and "seeing after her all the best we could between me and my sister." He had taken care of Mrs. Crist's yard and performed minor repairs around her house. He had been taking care of Mrs. Crist's financial affairs and had possessed a power of attorney since 1983. Prior to her entry into the nursing home, Mrs. Crist could write checks on her bank account, but the bank notified Mr. Smith if she wrote checks for more than $50.00. Mr. Smith said Mrs. Crist's assets consisted of "her home, her property," a money market account, and her checking account. Previously, her money was in certificates of deposit, but she misplaced some of the certificates. He stated he put his own money into Mrs. Crist's checking account so there would be "enough to cover the bills" because her social security and interest income were not adequate to meet her needs. From January through early June 1986, he had deposited about $4,650.00 to Mrs. Crist's account. He said his purpose in advancing the money was so "she can have enough principal to take care of her the rest of her life." The transcript then reveals the following during Mr. Smith's direct examination:

Q. All right. Now, Mr. Smith, do you plan to continue to keep on supplementing your sister's income in this fashion—

A. As long as she lives.

Q. All right. Now, let me ask you the question a different way. If—if the Court does not appoint you as conservator of your sister's estate, would you continue to subsidize and put the money in the way you have?

A. Absolutely not.

Q. All right.

A. Because I'm doing my very best to handle this thing so she can get by as reasonable as she can and have enough to—to take care of her as long as she lives.

Q. All right.

A. Her home right now, I wouldn't even think about trying—

THE COURT: Oh now—now just a minute. Just a minute.

Mr. Barton: All right.

THE COURT: There is nothing before the Court.

The Witness: Okay.

THE COURT: I'm ready to rule the case. I've heard enough. I will not be intimidated by your proposed threats from the stand. I find that the person is indeed in need of a guardian and a conservator. A public administrator will be appointed conservator of the estate. The public administrator will be appointed guardian of the person.

The Court is adjourned.

On appeal, Petitioner Smith contends the court erred in terminating the hearing and entering judgment during presentation of his case-in-chief and in failing to appoint him guardian and conservator because there are no grounds to overcome the "preference-for-relatives rule." [1]

We do not reach the merits of the appointment because the action of the trial court in abruptly terminating Petitioner Smith's direct testimony requires reversal and remand. By summarily stopping the hearing and making a ruling, the trial court deprived us of a full record from which to review the correctness of the appointment of the public administrator.

Although the trial court has broad discretion in the conduct of a trial, its power is not without limitation. *Holt v. Queen City Loan & Investment, Inc.*, 377 S.W.2d 393, 400–401 (Mo.1964). The trial judge should "listen, hear and from the evidence determine the issues raised by the pleadings...." *Chalfin v. Chalfin*, 121 Cal. App.2d 229, 263 P.2d 16, 19 (1953). To fulfill this duty, the judge, by his manner

---

1. We note that this case went to trial prior to *Matter of Weissinger,* 720 S.W.2d 430 (Mo.App. 1986), and *Matter of Gollaher,* 724 S.W.2d 597 (Mo.App.1986); thus, the trial court did not have the benefit of these rulings.

and conduct, should not prevent a full presentation of relevant evidence. The court should not adopt or exhibit a hostile attitude toward a party, his counsel, or a witness. *Duncan v. Pinkston*, 340 S.W.2d 753, 757 (Mo.1960). Even when exposed to great provocation, as courts many times are, utterances that defeat the right of a party to a fair trial are not justified. *Id.* Effective remedies are available to courts to deal with persons appearing in court who are "deemed to be obstreperous." *See, Duncan*, 340 S.W.2d at 757.

We recently have reviewed at least three cases in which the trial court directed a verdict or dismissed a claim before the end of the plaintiff's case. In *Jones v. Small*, 726 S.W.2d 883 (Mo.App.1987), we reversed the trial court's dismissal of all claims which occurred during defendant's presentation of evidence on his counterclaim. In *Koonce v. Union Electric*, 715 S.W.2d 19 (Mo.App.1986), we reversed the trial court's directed verdict for defendant during plaintiff's presentation of his evidence. In both cases, we noted, the losing parties had substantive evidence which was not presented due to the trial courts' actions. In *Chalet Apartments, Inc. v. Farm & Home Savings Association*, 658 S.W.2d 508 (Mo.App. 1983), we affirmed the trial court's granting of a directed verdict for defendant during plaintiff's presentation of evidence. We pointed out, however, that plaintiff's attorney admitted he had no more substantive evidence to present, *Id.* at 509, and we suggested that trial courts exercise caution, stating, "While we do not intend to encourage the premature determination of trials before the conclusion of plaintiff's presentation of evidence, we are satisfied that no injustice occurred here." *Id.* at 512.

In a guardianship or conservatorship proceeding, the status of the parties is not the same as in an ordinary civil suit in which one party sues another and injustice is determined by its effect on the losing party as in *Chalet Apartments*. It is true that often there is competition between individuals for appointment as guardian and conservator, but a court's ruling, in addition to affecting a particular applicant, invariably affects the ward and, possibly, the ward's beneficiaries.

▌ Recognition of the importance of the relationship between guardian or conservator and ward pervades the 1983 amendments to the Probate Code-Guardianship, RSMo ch. 475. From §§ 475.050, 475.055, and 475.062 it is apparent that the person the ward requests, or whom it could be inferred he or she would request if able to do so, should be given preference. Preference is given a particular petitioner, not because the petitioner wants the position, but because the ward would want the petitioner appointed. *See, Matter of Weissinger*, 720 S.W.2d 430, 433–34.

Concerning any preference to be given relatives, § 475.050(3), RSMo 1986, states that consideration shall be given "The spouse, parents, adult children, adult brothers and sisters and other close adult relatives of the incapacitated or disabled person...."[2] Petitioner Smith is an adult brother.

Both petitioners argue there was sufficient evidence to allow the trial court to make an appointment. We note, however, that the trial court's action prevented further direct evidence from Mr. Smith and cross-examination of Mr. Smith. It is argued that Mr. Smith was prevented from presenting his power of attorney. We think the power of attorney would be an important exhibit at trial as evidence of Mrs. Crist's preference, particularly in light of Mrs. Breding's statement that Mr. Smith "*allegedly* ... has power of attorney."

There was no appeal from the court's determination of Mrs. Crist's incapacity; that portion of the trial court's judgment stands. However, we find that the court abused its discretion in ruling before the completion of Petitioner Smith's case. We, therefore, reverse and remand for a new hearing on the issue of the appointment of

---

**2.** Petitioner Breding argues that this rule is inapplicable when there is family dissension. The record reveals no family dissension.

a guardian and conservator for Mrs. Crist. The court shall permit all substantive evidence by both petitioners and, if others apply for appointment, their evidence also may be considered.

Judgment reversed and remanded.

DOWD, P.J., and SIMEONE, J., concur.