

# Missouri Court of Appeals

## Southern District

## Division Two

In Re The Marriage Of:  )
ELIZABETH D. FARRIS and  )
ERIC A. FARRIS  )
           )
ELIZABETH D. FARRIS,  )
           )
    Petitioner-Respondent,  )
           )
v.  )    No. SD33837
           )
ERIC A. FARRIS,  )    **Filed: Apr. 18, 2016**
           )
    Respondent-Appellant.  )

### APPEAL FROM THE CIRCUIT COURT OF TANEY COUNTY

Honorable Cynthia A. MacPherson, Associate Circuit Judge

## REVERSED AND REMANDED

Eric A. Farris ("Husband") appeals the judgment that dissolved his marriage to Elizabeth D. Farris ("Wife"). Husband alleges eleven points of reversible error, but we need address only two. Because Husband was deprived of his right to present relevant evidence and have his case tried before an impartial fact-finder, we reverse the judgment and remand the case for a new trial before a different judge.[1]

---

[1] Husband's fourth point claims that the trial judge announced substantive rulings "in the middle of trial prior to hearing all of the evidence[.]" Husband's eleventh point claims that the trial judge erred by not granting his application for change of judge or "otherwise recusing on her own motion" because remarks she made during the trial "demonstrated her bias and prejudice against" Husband.

1

## Usual Standard of Review

In reviewing a dissolution judgment, we would typically reverse only if we concluded that the judgment was against the weight of the evidence, was not supported by substantial evidence, or misstated or misapplied the law. *Ludwig v. Ludwig*, 126 S.W.3d 466, 474 (Mo. App. W.D. 2004). In this case, however, because a reasonable person would find an appearance of impropriety and doubt the impartiality of the trial court, we must reverse the judgment without reaching the merits of any of Husband's challenges to its content.

## Applicable Due-Process Standards

"Under both the federal and state constitutions, [t]he fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Jamison v. Dept. of Soc. Servs., Div. of Family Servs.*, 218 S.W.3d 399, 405 (Mo. banc 2007) (internal quotations omitted). Implicit in the opportunity to be heard in a meaningful manner is the notion of an impartial decision maker.[2] "Although the trial court has broad discretion in the conduct of a trial, its power is not without limitation." *In re Crist*, 732 S.W.2d 587, 589 (Mo. App. E.D. 1987). A trial court "should not prevent a full presentation of relevant evidence. The court should not adopt or exhibit a hostile attitude toward a party, his counsel, or a witness." *Id.* at 590.

We must base our review on the objective facts of the record from the perspective of a reasonable and disinterested bystander, unacquainted with the personality, integrity, and

---

[2] Rule 2-2.2(A) states: "A judge shall uphold and apply the law, and shall perform all duties of judicial office promptly, efficiently, fairly and impartially." Rule 2-2.3(A) states: "A judge shall perform the duties of judicial office without bias or prejudice." Rule 2-2.11(A) provides that "[a] judge shall recuse himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned," then provides a non-exhaustive list of circumstances requiring recusal. Unless otherwise indicated, all rule references are to Missouri Court Rules (2015).

dedication of the judge. *State v. Lovelady*, 691 S.W.2d 364, 367 (Mo. App. W.D. 1985). We presume that a judge will act honestly and with integrity and will not preside over a trial if he or she cannot be impartial. *Smulls v. State*, 10 S.W.3d 497, 499 (Mo. banc 2000). "This presumption is overcome and disqualification is required if a reasonable person would find an appearance of impropriety and doubt the impartiality of the court." *Id.* Indeed, the recusal rule, Rule 2-2.11(A), "is not limited to actual prejudice[.]" *Anderson v. State*, 402 S.W.3d 86, 91 (Mo. banc 2013). We must review the entire record when determining whether the facts support disqualification. *Id.* at 92.

The trial judge's comments must also be considered in the context of all the judge's statements and the circumstances surrounding such statements. *Haynes v. State*, 937 S.W.2d 199, 204 (Mo. banc 1996). The common theme in cases requiring recusal "is either a fact from which prejudgment of some evidentiary issue in the case by the judge may be inferred or facts indicating the judge considered some evidence properly in the case for an illegitimate purpose." *Id.*

## Background

Husband and Wife married on December 3, 1994, and they separated on April 23, 2013. Wife filed her petition for dissolution of marriage on June 21, 2013. Husband and Wife have four children, D.F., I.F., N.F., and A.F., who at the time of trial were, respectively, 9, 11, 13, and 16 years old.

From its commencement, this was a highly contentious dissolution case that could be expected to challenge the patience of any trial judge. Multiple pre-trial motions were filed and heard, several judges recused during the course of the case, and several guardians ad litem ("GAL") were appointed and later allowed to withdraw. Husband and Wife each filed

3

motions seeking a psychological evaluation of the other, and Wife filed a motion requesting the appointment of a GAL for the minor children.[3] Wife's motion for psychological evaluation of Husband alleged, *inter alia*, that Husband "hit [D.F.] on the head and dragged him by the arm." The motion also alleged that Husband had threatened to abandon D.F. if he misbehaved. Husband's motion for a psychological evaluation of Wife questioned Wife's ability to care for and parent the children, and it claimed that Wife had "encouraged an alienation of the children toward [Husband]." An amended motion for temporary custody filed by Husband alleged that Wife had psychologically abused the children.

A judge previously assigned to the case granted the parties an interlocutory dissolution of marriage on July 17, 2014.[4] By the time the case was tried on January 9, 2015, Husband had filed eight motions for contempt. Four of the motions, which alleged that Wife had contumaciously dissipated marital property during the pendency of the case, were to be heard with the trial. The day before trial, Husband's attorney filed a motion for continuance that claimed his wife had a medical emergency. The trial court denied the motion, and Husband, a licensed attorney at the time, proceeded to trial *pro se*.

On January 20, 2015, eleven days after the "trial"[5] concluded, the trial court sent an email (the subject line of which was entitled "Judgment") to the parties and court clerk that included findings of fact and conclusions of law. Earlier that same day, Husband had filed

---

[3] The first GAL's motion to withdraw was granted in April 2014, the second GAL was granted leave to withdraw in November 2014, and Husband's subsequent motion for appointment of a GAL was denied. As a result, no GAL was present to represent the best interests of the children at trial.

[4] Several different judges had presided over this case before it was assigned to Judge MacPherson on October 20, 2014. Unless otherwise indicated, all references to the "court," "trial court," or "trial judge" are to Judge MacPherson.

[5] We put the word "trial" in quotation marks as the parties were only partially permitted to present relevant evidence during this proceeding. In some instances, we refer to members of Husband's and Wife's families by their first names if they share the same surname. We do so purely for clarity and not as a sign of any disrespect or familiarity.

4

an application for change of judge.[6] The next day, the trial court made a docket entry that it had failed to address the issue of GAL fees, and it directed that the remaining fees would be taxed to Husband as costs. The parties and the trial court continued to exchange multiple emails about requested corrections or modifications to Wife's proposed parenting plan until the judgment Husband now appeals ("the judgment") was entered on February 13, 2015.

The judgment awarded the parties joint legal and physical custody of the children, and it granted Husband limited parenting time with the children that included overnights on alternating holidays and a week during the summer. The judgment ordered Husband to pay monthly child support of $1,000.00, awarded each party the property he or she had in their physical possession, equally divided the life insurance policy proceeds of $68,000.00, and awarded Husband a real estate lot and a vehicle. The judgment allocated the parties' debts equally, except for a mortgage debt on the real estate lot awarded to Husband, and it denied Husband's application for change of judge as untimely brought.

On March 9, 2015, Husband filed a motion for new trial or, in the alternative, to vacate, reopen, correct, amend or modify the judgment. The motion was denied, and this appeal timely followed.

**Analysis**

Husband's fourth and eleventh points claim that the trial court misapplied the law by denying him minimal due process as evidenced by multiple statements the trial court made throughout the trial that demonstrated both a pre-judgment of the factual and legal issues

---

[6] The exact time that the application for change of judge was filed is not clear from the record because no file stamp is affixed to Husband's application. However, the trial court's email stated that the application had been filed earlier the same day and denied the application as untimely.

prior to the close of evidence and a "bias and prejudice" against Husband.[7]  Based on our

review of the trial transcript, we must agree.

Our analysis of Husband's due process claims necessarily focuses upon a subset of

the comments made by the trial judge during the course of the trial.  In compliance with our

obligation to review such comments within the context of all the judge's statements and the

circumstances surrounding such statements, *Haynes*, 937 S.W.2d at 204 (Mo. banc 1996),

we have set forth in the appendix that follows this opinion those portions of the trial

transcript relevant to Husband's complaints.

The trial judge's commentary during the trial that Husband was "just wasting

everyone's time" -- and the repeated statements that the trial court did not "care" about

particular evidence -- communicated disdain for Husband's evidence before the trial was

over.[8]  Indeed, the trial judge expressly admitted having pre-judged evidentiary issues on

more than one occasion during the trial.  For instance, when Husband was presenting

evidence about items of property, the trial judge stated, "None of it is going to make any

difference how I rule in this case.  I know how I'm going to rule in this case[.]"  When

Husband indicated he would call Dr. Bradford, a psychologist, as a witness, the trial court

stated, "I have got all the evidence I need and all you're doing is, as you have done all day,

is beat a dead horse[.]"  Added to these pronouncements was the trial court's extended

_____

[7] Husband preserved these complaints by making them at trial and then including them in his motion for new trial.

[8] At some points, the trial court made inconsistent pronouncements.  During Husband's testimony regarding the disposition of marital property, the trial court stated, "I'm finding you both guilty of misconduct and ignoring you both."  Then, on the very next transcript page, she stated, "I'm going to find as a matter of finding of this Court right now this instance that I'm finding no misconduct on the part of [Wife].  None.  Zero.  And I will not consider any misconduct in the dividing of the property."  Such conflicting statements would still cause a reasonable person to conclude that the trial court had determined contested factual issues before the trial was completed.

6

statement of findings and opinions consuming multiple pages of transcript *before* Husband was permitted an opportunity to testify concerning custody of the children.[9]

Viewing this cause from the perspective of a reasonable person familiar with the entire record but unfamiliar with the dedication, integrity, and personality of the trial judge, numerous comments from the trial court also indicate a lack of impartiality. *See Roe v. Ross*, 701 S.W.2d 799, 804 (Mo. App. W.D. 1985); *Rutlader v. Rutlader*, 411 S.W.2d 826, 831 (Mo. App. K.C.D. 1967).

> A judge presiding at a trial should at all times maintain an impartial attitude and a status of neutrality between contending parties. [He or she] should not conclude in advance of the end of the trial what [he or she] will do at that time. For this is to adjudge the controversy without hearing the evidence that ought to resolve it. [He or she] should exercise the highest degree of patience and forbearance toward the parties, consistent with decorum and an orderly trial, however irritating their emotional upset or personality may be, and any different attitude on [his or her] part is incompatible with that fair and impartial trial which courts require as due process.

*Rutlader*, 411 S.W.2d at 831.[10]

The trial judge's comments to Husband during the trial that indicated a lack of the requisite impartiality included: "somehow your egocentrical, self-centered arrogance has

---

[9] We should point out that "when it is necessary, a trial judge may step in to stop unnecessary waste of time or to restrain improper conduct on the part of counsel." *McDaniels v. Ehrhard*, 877 S.W.2d 688, 690 (Mo. App. E.D. 1994). Indeed, a trial court may limit the time for the presentation of evidence, but "[t]ime limitations should be imposed only after consultation with the parties." *Colquitt v. Muhammad*, 86 S.W.3d 144, 152 (Mo. App. E.D. 2002).

> If the evidence on essential points cannot be fully developed within the allotted time the court must show some flexibility. Counsel are normally the best judges of the time they require to develop their cases and of the need for cross-examination, which often depends on the clarity and candor of the direct testimony. Intervention by the court may sometimes be necessary but should not be the rule. The court's primary responsibility is to see that the issues are fully presented.

*B.J.D. v. L.A.D.*, 23 S.W.3d 793, 797 (Mo. App. E.D. 2000). Here, there was no indication in the record that the trial court consulted the parties on the time necessary to present their cases, and Wife cites no such advance consultation in her statement of facts or argument concerning this point. Instead, "[t]he old maxim that 'haste makes waste' is manifest here." *Id.*

[10] In the instant case, based upon the trial judge's repeated use of the pronoun "we" after having provided Wife's counsel with unsolicited favorable rulings and advice, a reasonable party might become convinced that he or she was facing two opponents instead of one.

7

taken over"; "I'm going to admit [the exhibit] into evidence because it shows just how foolish you are"; " any more stupid, stupid, stupid questions, I'm going to terminate this examination"; "[y]ou're almost spooky"; "you are a narcissistic who can't be dealt with under any circumstances"; "[y]ou're a drama queen"; "I have listened to you whine all day"; and "most of the stuff we saw today is you belly-aching[.]"[11]

If the record demonstrates that a reasonable person would find an appearance of impropriety, recusal is compulsory. *Anderson*, 402 S.W. 3d at 91; *State v. Nunley*, 923 S.W.2d 911, 918 (Mo. banc 1996). When viewed from that reasonable person perspective, the record here demonstrates, at the very least, an appearance of impropriety. Accordingly, the judgment is reversed, the trial judge is directed to grant Husband's application for change of judge, and the matter is remanded for a new trial before another judge. *See Buschardt v. Jones*, 998 S.W.2d 791, 804 (Mo. App. W.D. 1999).


DON E. BURRELL, P.J. – OPINION AUTHOR

GARY W. LYNCH, J. – CONCURS

WILLIAM W. FRANCIS, JR., J. – CONCURS

---

[11] Wife's one-paragraph response to Husband's fourth point begins with Rule 2-2.3(D)'s provision that judges are not "preclude[d] . . . from making legitimate reference to personal factors or characteristics, when they are relevant to an issue in a proceeding[,]" but she offers no citations to the record or any additional legal authority demonstrating that the trial court's behavior toward Husband during the trial was appropriate. Wife also contends that the trial judge "was patient and allowed [Husband] to present a full presentation of evidence, over 13 hours[,]" and that while the trial court "may have had 'harsh' words for [Husband], he faired quite well in visitation, custody and division of property." Again, Wife offers no citations or authority for these assertions, and we do not reach any issues regarding the substance of the judgment. Rather, we find that both parties must be heard in a meaningful manner, *Jamison*, 218 S.W.3d at 405, such that a reasonable person would not "find an appearance of impropriety and doubt the impartiality of the court." *Smulls*, 10 S.W.3d at 499.

*The "Trial"*

The trial commenced at 9:10 a.m. on January 9, 2015, and it concluded at 10:37 that evening.  Pursuant to our obligation to review the entire record before determining whether it supports Husband's claim that he was deprived of his constitutional right to an impartial decision maker, we will set forth the portions of the trial transcript that we believe demonstrate the appearance of prejudgment and a lack of impartiality.  This opinion should not be read as holding that any particular comment by the trial court, when viewed in isolation, would be sufficient in itself to require either a reversal of the judgment or a mandatory recusal by the trial judge; our ruling is based on the effect of the comments when viewed in their entirety.  *See **Anderson v. State***, 402 S.W.3d at 92.  We will present the relevant excerpts in the order in which they occurred, provide some brief context, and identify the testifying witness by name and any relation to the parties.[12]  Our references to specific evidence are solely for purposes of providing context for the trial judge's remarks.

*The first witness, Dr. Alan Aram (Husband's designated expert witness on the issue of parental alienation), testifying out of order before Wife's case-in-chief.*

Dr. Aram was testifying about various lists of indicators for parental alienation.  The trial court requested such a list and then engaged in the following dialogue with the witness.

| | |
|---|---|
| THE COURT: | But the word narcissism, I never had really used that word and it has been in this case in almost every filing, on Facebook.  It's -- the word narcissism just is -- and I think it's well served. |
| THE WITNESS: | You think it's accurate. |
| THE COURT: | I think it's very accurate. |

---

[12] We do not identify by name witnesses providing educational and mental health services to the children.

Husband's request to make an offer of proof of the answer he expected from Dr. Aram to a question that the trial court did not allow the witness to answer was rebuffed by the trial court in the following manner.

Q          Second part of that question was what types of responses might a child give in regard to questions that would be indicative that a child has been subject of parental alienation?

|  |  |
|---|---|
| [WIFE'S COUNSEL]: | Objection. |
| THE COURT: | Sustained. |
| [Husband]: | I'd just make an offer of proof as to his answer. |
| THE COURT: | You are pushing your limits here and the thing is, I have got from him the most important thing I needed to hear from him, which is there is a diagnostic recognized criteria of personality disorder of narcissism and that's what I'm dealing with and this alienation, I can't trust either parent based on that. I am going to interview these children. I am going to talk with these children. I am going to allow their psychologist to testify, but I've got a brain. I have education. I know where we need to go with this. |

*Wife begins her presentation of evidence with her own testimony*

The trial court informed the parties that it was restricting the remaining morning testimony to property issues and would then focus on child-related issues in the afternoon. When Husband asked Wife if certain items of marital property were in her possession, despite her previous indication that her uncle had taken them, the trial judge indicated that she had already credited Wife's prior testimony on the matter.

|  |  |
|---|---|
| THE COURT: | Why do we care? I mean, she said she has [some items]. She said you sold |

| | |
|---|---|
| | them to [Wife's uncle]. Where they gained [sic] between the time you sold them as per allegations and her coming back to her, where they were during inspection means nothing. |
| [HUSBAND]: | Judge, I believe they were stashed, quite frankly. I don't think any of this story is true. And I think they were stashed, and she tried to get away with it. |
| | And it makes sense. How is it that it's not there but yet all of a sudden she moves when there is no right of inspection into her new house and all of a sudden this stuff suddenly appears? |
| THE COURT: | [Wife] said [her uncle] took them over a period of time. Let's go with that. I mean, she has given you -- if you have some -- The Court has got it 23, 24, 25, 45, 67, 108 and 112 [from the list of items]. You're beating a dead horse. |

Husband then questioned Wife about when she became aware that she was prohibited by court order from disposing of marital property while the case was pending, and the following exchange occurred.

Q    Are you claiming that you sold items, just -- you just didn't know that you weren't supposed to?

| | |
|---|---|
| THE COURT: | She has asked and answered that. Now, I'm going to hold you in contempt of court if you keep insisting on beating a horse. I have told you to back off this. I don't care. It's not relevant evidence. You're trying to harass this witness, and this Court is not going to put up with it. |
| [HUSBAND]: | I was just -- I was trying to determine what her -- you know what, I'll ask a different -- |

11

THE COURT:                    I told you I have determined she knew
                              September 11.

Husband next attempted to ask Wife about whether she had received child support

funds he alleged he had paid.

Q       Now, you just mentioned about the fact you didn't get child support
        for some period of time.  You have learned that even after the order is
        paid when you pay it through the state, it takes awhile for them to set
        it up and things like that?

A       No.

        THE WITNESS:                  May I speak to that?

        THE COURT:                    I know how the state works and it don't
                                      take no three months.  Trust me.

        THE WITNESS:                  I know.  Okay.  Thank you.

The trial judge also interposed as follows when Husband asked Wife about her

statement that she used cash she received from selling items to pay attorney fees even

though her attorney had not yet charged for attorney fees.

        THE COURT:                    I'm cutting you off here, sir.  You're
                                      done.  You're done because the bottom
                                      line is simply this.  She listed a whole
                                      number of things she spent that for.
                                      And from the amount of filings you
                                      have filed in this case, from the amount
                                      of obstructionist behavior you have had
                                      since day one of this divorce, there is no
                                      way that the money she said she cashed
                                      out could have paid attorney fees in the
                                      normal course of things and I'm an
                                      expert on attorney fees.

                                              So beating this up is ridiculous.
                                      I don't know where you're going.
                                      You're cutting your own throat.  She is
                                      going to get her attorneys' fees out of
                                      this.  She is going to get her attorneys'
                                      fees and you're going to pay them

12

because all you want to do is pick on her and beat up.

You don't care about the truth. You don't care about facts. You don't care about evidence. You care about the ability to pick on her, and I've seen it throughout these pleadings. It's that narcissistic behavior that "I have not done anything wrong. This is everyone else's fault." We're not buying it. Nobody is buying it. Only you're buying it. Only you're buying it.

Now, I don't care about these nickel and dime items. She has admitted selling stuff. I'm going to find she knew she wasn't supposed to sell this. I'm going to find I'm not holding her in contempt. So there's no contempt here. You can quit it.

The only contempt I see, and I'm saying it again, is yours. Contempt for the process. Contempt for this Court. Contempt for your former spouse. You have no respect for anyone and you don't care about getting this divorce over with. You have thrown up every roadblock that you possibly can in this world to make sure you can drag this on and continue to beat up on your ex-spouse and your children.

And you do this out of some idea that you want custody of them is, to this court, developing into a joke. You would rather take the rest of the day picking on her than getting to the real issue, what's going on with your children. So go ahead, keep picking on her and it will buy you a large attorney fee because she is having to sit through this and pay an attorney and all these

13

motions you filed. All this paperwork. And it's --

I've got 40 years at this game, and you know what, this is the worst I've ever seen and I'm laying it at your doorstep. So proceed.

[HUSBAND]: Judge, I'm concerned that with your comments that you're prejudging this case.

THE COURT: I'm not prejudging. I'm judging your conduct as of 9:00 this morning and for the last 18 months. Now, how can you prejudge conduct that has been absolutely -- and some appellate court is going to look at this and they are going to go, "What in the heck has happened here."

So you just keep on. They have told you take what you want, they will pay you what you want, but that's not what you want. You don't want money. You don't want property. You want to beat up on her, period. And that's what this court has seen. That's what I -- I have tried to give you the benefit of the doubt when we started this, but that was all in paper before this.

So the bottom line is just continue your questioning, get to the heart of this. There is no contempt. I'm ruling those motions right now. They are done, all three of them. They are denied, so now let's move on.

[HUSBAND]: Judge, we haven't completed the evidence --

THE COURT: The motion is denied.

[HUSBAND]: -- on these matters.

14

| | |
|---|---|
| THE COURT: | No. You're done. I just told you they are overruled. You better listen to me or I'm going to have the bailiff put you in handcuffs. Now you move on. |
| [HUSBAND]: | I will do so, Your Honor. I'm just trying to try my case. |
| THE COURT: | No, you're not. And that's it. If you were just trying to try your case, you would be getting to the heart of this. What you are trying to do -- somehow your egocentrical, self-centered arrogance has taken over, and somehow you see yourself, "Court is wrong, I'm sure, because she is wrong, every lawyer, every other judge has been wrong, your children are wrong" and you have a very serious problem. But you move on and you continue to dig your own grave here. |

Later, Husband attempted to ask Wife whether she had participated in certain yard sales where marital property had been sold after the parties separated. The trial judge provided the following commentary about such evidence.

Q       Show you what's marked as Exhibit 3. You have a friend named Sandra Steele; is that correct?

A       Mm-hmm.

Q       And she is on Facebook as well; is that correct?

A       Yes.

Q       And, in fact, I think that you refer to her and she refers to you as besties. You guys are best friends?

A       Yes.

| | |
|---|---|
| THE COURT: | Does this have anything to do with the property? |
| [HUSBAND]: | It does. |

15

| | |
|---|---|
| THE COURT: | Does it have anything to do with what you want on this list [of marital property], that something was sold there that you want on this list? |
| [HUSBAND]: | It has to do with the items were sold, I believe, and contend and I think the evidence will show, that items were sold at this garage sale that were marital property items. That is a violation of The Court Order and should be considered by The Court. |
| THE COURT: | It won't be, and that's why you are just wasting everyone's time. I've got a list of what the property is. She said stuff went in garage sales. You don't have to nitpick as to what and nitpick it to what garage sale and if it did and I rejected hurts [sic] you so bad. I'm going to reverse myself rejected by Court Respondent's Exhibit 2.<br><br>I'm going to admit it into evidence because it shows just how foolish you are. I mean, these pictures are of kids dressing up and you want to make some big deal like there's some man there. |
| [HUSBAND]: | Judge, I wasn't there. I didn't participate. |
| THE COURT: | I don't care who was there. |
| [HUSBAND]: | I didn't participate in the garage sale. The testimony by the petitioner is false. |
| THE COURT: | How does having a garage sale have anything to do with dividing this marital property? |
| [HUSBAND]: | Because the marital property was sold. The marital property was sold right out from under me. |

16

THE COURT: That has nothing to do with the garage sale. All you have to do is say these are items I insist were sold. I want them or I want credit in my column for those. That's all you got to do.

Thereafter, Husband continued to question Wife about whether a list of items sold at a yard sale held at her boyfriend's residence were items of marital property. The trial judge sustained as follows a non-legal objection made by Wife's counsel:

Q So [Wife's boyfriend] who has children that are in their 20s has kids' clothes size five to seven that would match clothes that, for example, the two youngest children of the marriage had just grown out of?

A I don't know.

[WIFE'S COUNSEL]: Now here I will make one objection.

THE COURT: Go ahead.

[WIFE'S COUNSEL]: Is he saying that she -- that he is -- wants the children's old clothes and that selling the children's old clothes would be marital property? I just want to hear him say that that is what he's saying.

[HUSBAND]: It's not about trying to pick and choose and negotiate something here. It's about the fact that the stuff is not to have been sold, is to be valued.

THE COURT: Objection sustained. Move on.

Husband again attempted to ask Wife about marital property sold at yard/garage sales.

Q Where did Sandra Steele get this information about posting this ad?

THE COURT: All right. If you ask one more question about a garage sale, a yard sale, any more stupid, stupid, stupid questions,

17

I'm going to terminate this examination. Now, you have got it. Move on.

I don't want to hear another word. You better not say garage sale again or I will terminate this immediately.

Don't go there with me. Don't look at me like that. Don't roll your head. Go sit down, sir. We're going to take a recess and you're going to get yourself together or you're going to be held in contempt. And I don't like your open displays in this courtroom.

All right, five-minute recess.

(Recess taken.)

THE COURT: Before you continue your questioning, The Court would suggest that as offered early in the day, that you submit whatever you feel on this list you're entitled to that you have been deprived of, or valuation, and submit that to The Court and The Court will consider that. But it does no further good and I will not allow any further testimony about yard sales, about where this property is or isn't. I think she has thoroughly answered that, and I think any efforts now are just harassment.

So if you have a list you want to submit to this Court, I will allow it after today, if necessary, in order to make sure you are heard on your property rights. But this has nothing to do with property rights. So I'm going to terminate this questioning unless you have some other area you want to go into.

18

[A discussion followed regarding Husband's filing of "form 2" and that the trial court would permit either party to file a "form 9" after the trial.]

| | |
|---|---|
| [HUSBAND]: | . . . . I do have some additional questions and Judge --. |
| THE COURT: | Tell me what area. It better not have anything to do with a garage sale. |
| [HUSBAND]: | I would have to look through the information I have. I know that one thing that I would like at least to follow up on is, and it's for impeachment purposes, is [Wife] answered request for admissions and I will tell you that, if given the latitude to go into that, I believe that you will see that there was an inconsistent answer given on that. |
| THE COURT: | Submit the request for admissions. I will review them. That's all we need. We don't need any more than that. |

Husband offered a request for admissions, went on to question Wife about a series of exhibits, then alerted the trial court about the nature of additional exhibits he wished to address.

| | |
|---|---|
| [HUSBAND:] | Judge, I want to be up front with you. On the issue of garage sales, I do have some exhibits that do relate to those. |
| THE COURT: | I don't care if she had a garage sale. I am ruling them immaterial and irrelevant. If you want to offer them and I'll put them in the file. Give them to the court reporter to mark and she can show them rejected. |
| [HUSBAND]: | I will do that. So would this be considered to be an offer of proof, then, and they are rejected? |

19

| | |
|---|---|
| THE COURT: | You're offering these exhibits. I'm finding anything to do with garage sales from before the break forward, I have already said as immaterial and irrelevant. If you want to put them in there for whatever purpose, I have no intention of looking at any garage sale exhibits, but put them in there, if that's what you want to dirty the record up with. |
| [HUSBAND]: | Well, Exhibit 6. |
| THE COURT: | Let the court reporter mark them and hand them up. We'll be done. |
| [HUSBAND]: | Judge, as I come across garage sale stuff, I'll follow that procedure. |
| THE COURT: | That will be fine. |
| [HUSBAND]: | Otherwise is it okay if I ask questions of [Wife] if it's not garage sale related? |
| THE COURT: | I have asked you to submit your list. What area are you wanting to go into now? If you have items -- the whole purpose of this is to determine what items you want that you think you're not getting. |
| | [Wife's] position is everything has been divided. She wants nothing you have got. You can have anything she has, and yet you still keep beating and beating and beating a dead horse. You won't tell us what you want. You want to play hide the ball with that. |
| [HUSBAND]: | I haven't taken the stand yet, and when I do, I have my form 2 that I will testify about. |
| THE COURT: | Okay, fine. Then the rest of this -- she can step down. We don't need any more. |

20

[HUSBAND]:                  So you want me to mark up any and all
                            remainder of these documents and just
                            give them to the court reporter and they
                            will be refused?

THE COURT:                  Just list them off to me and I'll refuse
                            them on the record.

[Husband then described Exhibit 7 "show[ing] some of the
property[.]"]

THE COURT:                  Mark it as Exhibit 7.  I will admit it for
                            the weight of it, which the Court finds
                            minimal to none.

[The trial court then admitted Exhibit 8.]

[HUSBAND]:                  Judge, for the next item, could I ask
                            [Wife] some questions and the
                            questions --

THE COURT:                  What is it?

[HUSBAND]:                  The question I would ask is one of the
                            items on exhibit [sic] you just received
                            shows this longhorn skull and horns,
                            okay?  And what I want to ask her is
                            where it is currently, if she knows what
                            happened to it and where is it currently
                            located.  And it relates to the next
                            exhibit, which is a photograph that I
                            want to show her.

[WIFE'S COUNSEL]:           May I see that?

[HUSBAND]:                  Not yet.

THE COURT:                  Show her the exhibit.  We are through
                            with playing hide the ball.

[WIFE'S COUNSEL]:           Doesn't mean anything to me.

THE COURT:                  Ask your questions.  I just can't believe
                            you insist on shooting yourself in the
                            foot.  You know, I make good notes for

21

you and then you turn around and it just -- I don't know why you do this. I haven't seen an exhibit you have admitted yet that doesn't help her into the case, but keep going. You're building her case for her.

[Husband questioned Wife about Exhibit 9 and offered it into evidence.]

[WIFE'S COUNSEL]:          That one I will object to only as it's been identified as not having any particular relevance.

THE COURT:          I don't think any of this does so, you know, we'll admit it just for the sake of -- I don't see anything -- he's hurt anything but himself in this.

[WIFE'S COUNSEL]:          Then I withdraw my objection.

Husband questioned Wife about the location of certain jewelry and whether Wife asked the insurance company to "bypass" Husband as one of the insured's following her report that her wedding ring had been lost or stolen.

Q          So if I have documentation from State Farm that you --

THE COURT:          If you have it, pull it out.

[HUSBAND]:          I will, Your Honor. I will produce it.

THE COURT:          Stop it. You're done. You're done. I don't care.

          Now, either show her the documents and quit playing like Perry Mason out there over this silliness. You're almost spooky. But you follow up on the State Farm and then you're done because you're not going anywhere.

[HUSBAND]:          Can I show her this exhibit?

22

THE COURT: Yes.

BY [HUSBAND]:

Q      Exhibit 10 shows you with a variety of jewelry. These are screen shots from, I believe, your Facebook page.

    THE COURT: What are we alleging? I don't even know what you're alleging. I got your contempt. They have already been -- where are you going with this?

    [HUSBAND]: Judge, when you look at the dates of these and these are expensive items and at least two of them are still insured by State Farm. These are substantial priced items. I mean, in the tens of thousands of dollars, okay. State Farm alone on two items insures them for $15,000, I believe. Okay?

    THE COURT: Then cut to the chase.

    [HUSBAND]: That's what I'm trying to do.

    THE COURT: And quit dancing around the courtroom like you're trying to trap her. All you're doing is irritating The Court.

The following exchange occurred after Husband had offered Exhibit 10.

    [WIFE'S COUNSEL]: You know what's really funny about this is that I'm looking at some pictures and two of these pictures show her with nothing on but that cross, so I don't know how far back it goes.

    THE COURT: I told you he's done nothing but shoot himself in the foot with this.

Exhibit 10 was admitted and Husband returned to his cross-examination of Wife.

Q      You have testified that property went to your uncle, went to your parents, etcetera [sic]. Did you have anyone sell property or attempt to sell property to you since the separation, not sell to you but for you?

23

A  Um, since the separation?

  THE COURT:    Limit it to property that's on her list or not on her list.

  [HUSBAND]:    Certainly.

  THE COURT:    Is there something not on her list that you think should be there? Let's talk about it. Is it on your list?

  [HUSBAND]:    It is on my list.

  THE COURT:    Fine. You can testify to it and compare the two lists, but to sit here, did you do this. I don't care who sold it or why. If you say she had this, if she wants to put her on rebuttal as to what you say or don't say but we're pretty well done here.

  [HUSBAND]:    May I have this marked?

  THE COURT:    Mark everything you want and this testimony is done. You may step down.

*Testimony From Wife's Third Witness, Her Brother, Peter Tsahiridis*

Peter testified about a gun collection that Wife alleged Husband owned and was hiding. As Wife's counsel questioned Peter, the trial judge interjected to give Wife's counsel advice as follows:

Q  Are [the pistols depicted in pictures] all the same or are they different? I don't need two pictures of the same thing.

A  That I wouldn't be able to know, but it looks like a Glock series.

  THE COURT:    This is going pretty afar. He's having trouble. I would just withdraw them. We've got some pretty good testimony.

During Husband's cross-examination, the trial judge sustained an objection before it was completed.

24

Q      Peter, you and your children and your wife are estranged from your in-laws, her parents, aren't you?

A      No.  We just talked to them when our baby was born, in fact, by email.

Q      You haven't cut them off from contact?

A      No.  We talk to them.

Q      From seeing your kids?

A      No.  I can't force people into my house.

[WIFE'S COUNSEL]:      I will object as to --

THE COURT:      Sustained.

*Additional Exchange with the Trial Court about Property Issues*

Husband attempted to further address property issues before Wife finished her case-in-chief, and the following occurred.

THE COURT:      It's a math problem, you know.  I don't care what she sold.  I'm not going to find any misconduct whatsoever on either party whatsoever.  I think we just now need to crunch the numbers.

. . . .

[HUSBAND]:      Well, Judge, I still think there are property issues that should be in front of The Court.

THE COURT:      Like what?

[HUSBAND]:      I have additional -- I haven't testified on any property issues.  I have my own form 2 that I need to be able to testify before The Court and testify about it, and I have additional information that I want to provide to The Court.

THE COURT:      About what?

25

| [HUSBAND]: | Well, my form 2 goes through -- a variety of the property goes through valuation issues, things like that. I have got information related to the garage sale that was held. |
|---|---|
| THE COURT: | We're not saying garage sales. Those are words of contempt. I'm done with it. I don't care. Now get that through your head. I don't care if she took the clothes off your back and sold them in a garage sale. It's over. We're crunching numbers now, so I will not allow testimony on that. |
| [HUSBAND]: | Then I just need to make a record on that. |
| THE COURT: | You submit whatever because I'm not taking anymore [sic] testimony. I got exhibit clear up through 13, and I'm sure some appellate court is going to wonder why I had so much patience because they all know me. No, that wasn't [Judge MacPherson] sitting through all that garbage and it's garbage. |
| [HUSBAND]: | I've got additional documentation related to the property that was basically stripped out of the house post[-]foreclosure taken by [Wife]. |
| THE COURT: | Don't care. |
| [HUSBAND]: | It's marital property. I have included it on my form 2. |
| THE COURT: | Show me your form 2. I just want you to list what property you think there is. I don't care if it was stripped. I will give -- I'm going to give -- [Wife's counsel], I'm going to give him 10 days to submit what property he thinks there should be and the valuation and you have an opportunity to respond 10 days. |

The trial judge then advised that she had the parties' mandatory disclosures and

stated, "I don't need testimony. We know what your position is. It's all gone and it's her

26

fault.  I just summed it up, and I don't have to listen to two more hours of it's all gone and it's all her fault anymore."

Wife's counsel indicated that she had two more witnesses who would address property issues, and the trial court remarked, "I don't want to hear either one of those between you and me, but I think [Husband] indicated he wanted to hear them because I don't care to hear either one of them."  Husband denied that he had been paid by Wife's uncle for certain items, and Wife's counsel presented two additional witnesses.

*Testimony from Wife's uncle, John Kastanas*

While Husband was cross-examining Kastanas, the trial judge interposed and sustained her own objection to one of Husband's questions.

Q       Which of the items owned by you under this story is currently held by her?

THE COURT:              Objection to -- I'm not going to allow this.  Sustained.

[WIFE'S COUNSEL]:       Thank you.

THE COURT:              I mean, I don't care.  We've already been over this.  He said he sold you stuff.  I got the amounts, 6 to $7,000 worth.  He left some stuff there.  He gave her authority to sell it.  He doesn't know what amount she paid him for it. What anyone has at this point is anybody's -- it's ridiculous, so move on.

After Husband finished his examination of Kastanas, the following exchange occurred:

[HUSBAND]:              Judge, I have witnesses if -- I mean, I don't know if you're finished.

27

| | |
|---|---|
| [WIFE'S COUNSEL]: | On the property, I'm done unless there's something you want to hear. |
| THE COURT: | Just so you know, I'm done with the property, too. What do you need? |
| [HUSBAND]: | I mean, with all due respect, I'm trying to try my case here and I should have the right to call witnesses. |
| THE COURT: | Who do you want to call and what is it about? |
| [HUSBAND]: | I have witnesses in the hallway such as Christina Tsahiridis, Dimitrios Tsahiridis, Mark McFadden, Sherry Harris, Anna VanWinkle, Janette McFadden. And then, of course, I would wish to testify myself. |
| THE COURT: | Why don't we hear you and then I don't know of any of these witnesses you listed that can add one thing to where we are, which are those four items I listed for you. |
| | I am not -- now, you listen to me -- going to -- for another two hours after three or four hours listening to garage sale garbage, I'm done. And I have listed the four, we're all in agreement. This is all that counts. |
| | You have wound up with that $68,000 [life insurance policy] going to get awarded to [Wife]. This is what you're pushing for, keep pushing. Just keep pushing. Go ahead. Take the stand. |
| [HUSBAND]: | All I'm trying to do is present evidence. |
| THE COURT: | All you're trying to do is what you have done all day, what you have done for 18 months is be obstructionist, to file motion after motion to never deal with |

28

facts. I've already been through this. It's in the record. I'm making a very good record of this. The appellate court is going to see this is all garbage. We've got all these great exhibits to show.

Now that you have had hours on garage sales, you go ahead and take the stand but don't you dare talk about garage sales.

*Husband's Testimony*

At one point during Husband's testimony, the trial judge directed Wife's counsel to make an objection.

| [HUSBAND:] | Your Honor, this exhibit marked for identification as -- identification purposes 14 is a copy of an invoice and a check made from the firm's account that's signed by [Wife] whereby it documents when she changed the locks on the house and therefore locked me out of the house. It is dated on July 2nd, 2013. I offer. |
|---|---|
| THE COURT: | I -- Object and it will be sustained[.] |
| [WIFE'S COUNSEL]: | Object. |
| THE COURT: | That will not be admitted. The house was sold. There is no dispute. We went through this not once but twice today, that nobody was disputing anything about the house. We're on property issues. I don't care if she locked you out of the house. The house is gone. |
| [HUSBAND]: | Judge, the way that this is relevant is you heard testimony earlier about the supposed access I had of the house during which I was supposedly removing items from the house. |

29

THE COURT:              That's not an issue either.

[HUSBAND]:              This contradicts that timeline.

THE COURT:              I don't care. Put it into evidence. And what we are going to do is let you talk. I think if we let you talk for about an hour, you may talk yourself out. None of it is going to make any difference how I rule in this case. I know how I'm going to rule in this case, but go ahead and hand it up here.

                        You know, it's funny to me that you have exhibits like this and yet you sit there and tell this Court that you paid her from the time you separated clear through last summer July 2014 but you don't have those exhibits. Boy, we have all this other stuff in nice purple files and marked. Whatever.

[HUSBAND]:              Actually, Your Honor, what I told you was that I may well have it. If not, you gave a 10-day time period to provide it. Either I'll have it today or I'll provide--

THE COURT:              They were all in draft form. So there you have it.

[HUSBAND]:              I haven't even taken the stand until now. So of course I wouldn't have offered it.

THE COURT:              Start marking.

As Husband moved through certain exhibits, and as he described one exhibit, the trial court remarked, "I don't see any of those things you're talking about in these exhibits but just keep them coming because they carry no weight with this Court[.]" Husband offered to point out items in the exhibits. The trial court replied:

THE COURT:              No. I don't care. She has already identified that she has taken a lot of

items.  I don't care where they wind up.  I don't care if she sold them at a garage sale or they wound up at -- you have been given the opportunity to list what items you wanted and their value.  I don't know where they are and how they are there makes any difference whatsoever.  The Court has given you 10 days to determine what personal property you want.

Later during Husband's testimony, Wife's counsel interjected, asking Husband whether he wished to question or release three expert witnesses who were waiting in the hall, and the trial court offered the following commentary:

THE COURT:    What he wants to do is spend hours and hours showing Facebook pictures of items we all know were in the home and everyone has been asked to divide and he for some reason has this perverse, perverse need to play yard sale and Facebook games and put a bunch of pictures in here that nobody cares about and I don't care where this stuff is or to see pictures of it.  And I don't even intend to look at it.

You better hurry up because you're going to have about -- a very short time.  If you have got witnesses out there, you need to be putting them on.  I don't even know what this is.  I haven't a clue.  I'm a lawyer with 40 years experience, I don't have a clue what any of this is.  Don't have a clue.  Don't have a clue how it relates to anything in this case that is relevant.

It's totally immaterial and irrelevant.  I'm giving you leeway.  I've given you leeway all day.  We're getting to where you need to -- if you're -- obviously, you're interested in the property, not the children.  The children

31

| | |
|---|---|
| | were right on.  Then you better cut to the chase, I guess, and get on with it. |
| [HUSBAND]: | Judge, you're making hasty and fast decisions and prejudging this case. |
| THE COURT: | Yeah, really I am.  Yeah.  I have reviewed your lengthy -- no, I'm not going there with you. |
| [HUSBAND]: | All these exhibits show misconduct.  All these exhibits show basically the same thing that you've charged me with, which is theft.  Theft. |
| THE COURT: | I'm finding you both guilty of misconduct and ignoring you both. |

Finally, Husband's testimony about property ended with the following exchange.

| | |
|---|---|
| THE COURT: | All right.  We're done.  We're done.  I told you no more garage sale.  I told you I didn't care how many thousands of garage sales she had or what she sold at them and you know what -- |
| [HUSBAND]: | Exhibit 27, Your Honor. |
| THE COURT: | I'm going to find as a matter of finding of this Court right now this instance that I'm finding no misconduct on the part of your ex-wife.  None.  Zero.  And I will not consider any misconduct in the dividing of the property.  So now we need to do what I told you to do.  List what the heck you want.  There is no misconduct.  You have spent all day trying to prove it.  It doesn't matter.  The Court is finding there was none, period.  Under the totality of the circumstances we've listened to all day that there is no misconduct. |

| | |
|---|---|
| [HUSBAND]: | Exhibit 27, Your Honor, shows that [Wife] lied on the stand earlier. It shows that she had a garage sale permit for February of 2014, Your Honor. |
| THE COURT: | Fine. |
| [HUSBAND]: | She denied that. |
| THE COURT: | Put it in. We're done. There is still no misconduct and there is no fraud. I heard her testimony differently than you did. |
| [HUSBAND]: | It shows fraud. It shows fraud on The Court. |
| THE COURT: | If you continue to argue with me, the bailiff is going to put you in handcuffs and put you in jail for contempt because you totally ignore everything I've been telling you for seven, eight hours today. |
| [HUSBAND]: | Your Honor, I would like to testify about these items of missing property. |
| THE COURT: | No. The property has been listed. They have offered to give you any property you want or buy you or pay you off. Your turn listening to The Court, period. We're done with this today. You're done. You're done. Get off the stand. Get off the stand or I'll have the bailiff put you in handcuffs. |
| [HUSBAND]: | Judge, everyone has testified about that missing property except me. You are refusing my right to testify -- |
| THE COURT: | Yes, I am. |
| [HUSBAND]: | -- on a point that is in controversy in this trial. |
| THE COURT: | It's moot. They told you they will give you the property or the value thereof. |

33

Make your list. All you want to do is stir the pot. You don't want property. You don't care where this property is. You want to get in this Court's face. You want to get --

You are into yourself like no one I've ever met in my entire life. Your own witness testified that the personality disorder under my questioning of narcissism is not treatable. "You got it, girl," is what he said to me. And you are diagnosed with that, and you are a narcissistic who can't be dealt with under any circumstances. I have the psychological reports in the file to back me up on this. You are now abusing The Court. You're abusing all the parties to this case as you have done all along. Now be seated. Be seated.

Now, if you have other witnesses you want to call, I am so tired of this missing property, it's ridiculous. It's done.

[HUSBAND]: Can I -- even if it's rejected --

THE COURT: Do you have any evidence you want on your kids?

[HUSBAND]: Of course, Judge, but I mean, I still have witnesses.

THE COURT: All right, then let's get to it because you're done. I'm done on the property.

[HUSBAND]: I still have witnesses that I should be allowed to call on the issue of property.

THE COURT: No. I'm done with property.

[HUSBAND]: Can I offer, even if it's rejected, and I'll just put it together as group exhibits. This is -- shows the property as taken

34

down and stripped from the marital home.

THE COURT: Nope.  Don't care.

[HUSBAND]: Variety of property that shows up at her current residence.

THE COURT: You have beat this.  Just move on.

[Husband then asked that he be permitted "at least" to mark some exhibits for the record.  The trial court then "accepted" Husband's offer of "Group Exhibits 28 and 29".]

[HUSBAND]: The other exhibits that I offer --

[WIFE'S COUNSEL]: I just want to make sure it's under objection.

THE COURT: No, I'm done with property.  All you want to keep -- just keeps going on and on and on and on and on and on and on about property and where it's at and I don't care.  We have to list.

[HUSBAND]: Judge, the theft of property in this case went on and on and on and on.

THE COURT: Well, yeah, right, right.

[HUSBAND]: It did, Your Honor.

THE COURT: Then pick out what you want and send me the list.  You have 10 days.

[HUSBAND]: But I should be allowed to provide testimony.  I should be allowed to provide evidence.  I should be allowed to ask the witnesses to testify.

THE COURT: You take those two last exhibits and show it to some appellate court and all this stuff and why it was relevant because I find it immaterial and irrelevant.  Move on.

35

| | |
|---|---|
| [HUSBAND]: | Well, I have other property witnesses. Am I not allowed to call them? |
| THE COURT: | Property evidence is closed. |
| [HUSBAND]: | Okay. |

*Additional Evidence Related to the Children*

As Husband outlined the witnesses he intended to call regarding the children, the trial judge addressed previous testimony from a school principal called by Wife.

| | |
|---|---|
| THE COURT: | Let me tell you guys something. As I have told you earlier, in hearing the junior high principal, these are some of the most incredible kids out there. I don't know that we need to keep going over that. They are incredible. |
| [WIFE'S COUNSEL]: | Judge, that was the next question. I have got two other principals coming and I was going to -- because of every school and I was going to ask Your Honor if you felt you needed to hear from more principals. |
| THE COURT: | I met the children. They are outstanding. They are brilliant. |
| [WIFE'S COUNSEL]: | All the principals are going to tell you what the first told you. So, I will release my witnesses that are school witnesses. |
| THE COURT: | All right. |

When Husband called a counselor as a witness, and Wife's counsel stated that she had "no use" for the witness, the trial court stated, "Call him or let him go but I don't need to hear anything from these counselors. I read the reports that are in the file."[13] Husband

---

[13] Throughout the course of the trial, the trial judge referred to having already read (and apparently relied on) certain documents contained "in the court file" as support for her prejudgment of some of the issues in the case. The record on appeal is devoid of any indication that these various documents were received into

released the counselor from any confidentiality obligation, but Wife did not, and Husband asked the court to rule that there was no confidentiality issue. The trial court stated: "It's marriage counseling between the two of you. You're divorced. There is an interlocutory order of divorce. It's immaterial and irrelevant and I'm not going to order him to answer anything. I'm going another direction."

The counselor was then examined by both parties about counseling sessions with some of the children. Following his testimony, Wife's counsel informed the trial court that there were still "three professionals" to testify, and this exchange occurred:

| | |
|---|---|
| THE COURT: | For what? |
| [WIFE'S COUNSEL]: | Well, they were called by Mr. -- there's one for me . . . the childrens' [sic] current counselor, which I assume Your Honor will want to hear from their current counselor. |
| THE COURT: | No. |
| [WIFE'S COUNSEL]: | Okay. I'll let him go. |
| THE COURT: | We've read all the reports. These children have been in and out of counseling. They are normal, healthy children. |

Regarding Dr. Mark Bradford, who was expected to testify as to the parenting skills of both parties, the trial court stated that she saw no need for any such testimony due to her reliance on his written report contained in the case file, and Husband responded that the witness would address an issue previously raised by the trial court.

| | |
|---|---|
| [HUSBAND]: | Your Honor, you commented the other day when we had pretrial conference |

---

evidence at trial or that the parties had stipulated that they could otherwise be considered as substantive evidence in the case. "The mere filing of a document does not put it into evidence." *In re Morrison*, 987 S.W.2d 475, 479 (Mo. App. S.D. 1999) (citation omitted).

that in the reports that I, according to your words, I did not fare as well in the report as [Wife] did. You have also characterized me today as being hyper narcissistic, I don't remember the exact quote. I would like to call him to address that since, obviously, that's The Court's conclusion. So I want to be able to address that for The Court.

THE COURT: He found both of you capable of parenting. I don't need to hear anymore from him. I've read his report. If you want to put him on to talk about narcissism briefly, we will allow that, but I don't know that you know how to do anything briefly. Everything you've told me you would do briefly has gone on and on and on and on, ad infinitum. So, if you want to put him on briefly for that, we'll allow. It has nothing to do with custody. This is all we're dealing with now. Everything else is done.

[HUSBAND]: Custody is at issue. I mean, that's what we're dealing with now, so custody is at issue.

THE COURT: Whether or not you're narcissistic, he found the traits of narcissism toward your ex-wife, so, I think you exhibit narcissistic traits by your conduct here in the courtroom. That's my own observation. He can't help me with that. I'm going by what I see based on your conduct towards your children, toward The Court, toward everyone, and the fact that he used that phrase first doesn't mean that it's not what I'm observing myself.

And whether he says it's mild or moderate, I'm going to say you're full of it. I have been putting up with it and you have not. So there you go. He can't help me on that issue.

38

[HUSBAND]:                With all due respect, Judge, you have not ever observed me with my children. To make a comment that you have attributed that I have had that type of ill behavior toward my children, I mean, Judge, that does not match the actual facts.

THE COURT:                This Court will see all the stuff in the file as to that conduct so it's all there, every bit of it's there.

                                          . . . .

[HUSBAND]:                [Wife and her counsel] have alleged in this case that I was inappropriate during counseling sessions and that I, you know, in counseling sessions with the kids that I interrupted, I wouldn't let them speak and I ran over the top of them.

[WIFE'S COUNSEL]:     We all can see that could never have been true.

                                          . . . .

THE COURT:                And I told you guys going in that we're playing this straight up on what this judge hears and what this judge reports, you have asked me to read which I have done, and I'm just -- I don't understand why you put in a report from a psychologist your last witness that totally torpedoes you. I mean, everything you do.

                                 I actually think that these three ladies need not have shown up. Had you come here alone and put the evidence on, they still would have won. That's the kind of evidence you're putting on.

| [HUSBAND]: | Judge, with all due respect, I think you have ruled this case already and that last comment, I think, underscores -- |
|---|---|
| THE COURT: | I think I have. I have got all the evidence I need and all you're doing is, as you have done all day, is beat a dead horse, whether it's garage sales or impotence or children, you just want to talk about it. If you want to put him on briefly, it's not going to change what I have observed in the record in your open court conduct. |
| [HUSBAND]: | I will call him, then, Your Honor. |

*Dr. Bradford's testimony*

During his examination of Dr. Bradford, Husband asked whether either parent "fare[d] better than the other" in the doctor's reports concerning Husband and Wife. Dr. Bradford stated that that was "a real difficult question to answer[,]" and the trial court interjected the following:

> He doesn't know what we're weighing. He doesn't know what we're weighing. He doesn't know why I said that. I said that because she showed interest in the children. She showed contact with the children. She showed activities with the children, and I saw in your report mostly complaining about your relationship.
>
> The only reason I say that, not that she was psychologically more sound or not more sound. It was a basis as she fared better in terms of her knowledge and contact and interaction with her own children, and this has been through this whole entire case. But I take it back if that helps anything.
>
> And it was just -- I said it was benign for both of you but you can't

40

hear those words. I said it was a totally benign report that indicated that both of you were totally capable of parenting. Both of you might need counseling to learn how to handle the situation better. I thought it was a relevant report. I should not have said that. It's just that in terms of the children and that was what I was talking about at that time. As to any other issues.

*Trial Court Comments On Additional Testimony About the Children*

As the trial moved on, one witness, a doctor, expressed "concern" during her testimony over the scope of information covered by her subpoena.

| THE COURT: | I'm with you. I see -- I have to tell you, Ma'am, I've read all the reports in the file. The children have been extensively counseled. The file is replete with those counseling sessions, and I have reviewed them. I have spent two hours with the children today. I think we're all where we need to be but [Husband] wants to press ahead. |
|---|---|

Wife's counsel outlined additional witness testimony in another exchange with the trial court.

| [WIFE'S COUNSEL]: | I have two witnesses who will -- he said that it was not true that he ever threatened to arrest the children. |
|---|---|
| THE COURT: | We don't need to hear that. |
| [WIFE'S COUNSEL]: | You don't need to hear that. |
| THE COURT: | No, don't need to. I have four children who say that's what happened. It doesn't matter whether they did or not, that's what they are all sticking to. |

41

*Record concerning additional witnesses to be offered on behalf of Husband*

The trial judge allowed Husband to examine a mutual friend of the parties, Shanna Tilley, about allegations that Wife had used A.F. to send messages describing why Wife left Husband, but the trial court stated, "Let's make this short because it's not going to impact anything that happens in this case. If you want to make a record of it, you go right ahead.

When the trial court asked about how many more witnesses Husband planned to call, the following occurred.

| | |
|---|---|
| [HUSBAND]: | I have one, Judge. |
| THE COURT: | Whatever. You help yourself with the school witnesses immensely, then you hurt yourself. You just don't know when to quit. |
| [HUSBAND]: | Probably eight witnesses, Your Honor. |
| THE COURT: | About what? |
| [HUSBAND]: | Judge, my children mean everything to me. |
| THE COURT: | There is nothing you put on except -- |
| [HUSBAND]: | I'm here fighting for the best interest of my children and I should be able to put on the evidence. |
| THE COURT: | You're a drama queen. Go ahead. |

Later, the trial judge again expressed her displeasure at Husband's attempts to present witnesses.

| | |
|---|---|
| THE COURT: | Oh, dear heavens. What are these witnesses going to testify to? |
| [HUSBAND]: | Trish Tallon is going to testify about how [Wife] bashed me in front of [A.F.]. I'm going to talk to [Wife's |

42

|  |  |
|---|---|
|  | mother] about some issues related to, again, the child issues. I'm going to talk to [Wife's father] about how he kidnapped my son on April 27 of 2014 during one of my visits. |
| THE COURT: | And what does that have to do with your custody and the mother? |
| [HUSBAND]: | Judge, is that appropriate that a grandfather would go kidnap a child during a parent's parenting time? |
| THE COURT: | All you want to do is fight. You don't want to get along with anyone. |
| [HUSBAND]: | Judge, it happened. [Wife] sent her father in spite of a court ordered visit that I had, she sent her father to nab [N.F.] and take him away from me, which is what he did. |
| THE COURT: | It doesn't go to affect your right to have the type of custody this court orders, period. What he did, period. |
| [HUSBAND]: | I'm standing here. You're prejudging this case. |
| THE COURT: | I'm so unhappy you're sad. You are a drama queen, prima donna like I have never seen in 40 years as an attorney.<br><br>You start putting these on and I would caution you just to sit there and listen. Let's survive this as best we can. Call a witness and they better be relevant to something, and I don't want to hear about anyone kidnapping grandchildren. |

*Testimony by the parties' mutual friend, Patricia Tallon*

As Tallon was being examined by Husband, the trial court interrupted with the following direction to Wife's counsel.

43

Q	And at some point, did [A.F.] walk up to the two of you as [Wife] was talking to you?

A	I think so. I think maybe she came and got something from the car. Honestly, I cannot remember. I don't think she was part of the conversation if that's what you mean at all.

Q	She wasn't actually speaking. She may have been just there within earshot?

THE COURT:	No, you're not characterizing her testimony. I got her testimony. You object.

[WIFE'S COUNSEL]:	Objection.

THE COURT:	It's sustained. Don't try to characterize her testimony. She is your witness. You've asked the question. She's answered. And now you're re-answering it for her to fit your purposes. Question, and don't lead.

*Testimony by Wife's mother, Christina Tsahiridis*

During Husband's direct examination of Christina, the trial court interrupted again.

Q	When you talked to my mom on February 1 of 2014, you admitted that you told the kids that I was disgusting, correct?

A	That is not correct. And I would like to clarify.

THE COURT:	No, you don't need to.

THE WITNESS:	Okay.

THE COURT:	We're just indulging him right now.

*Testimony by Wife's father, Dimitrios Tsahiridis*

Husband had previously asked Christina about cursing at him in Greek in front of D.F. Husband then asked Dimitrios the meaning of a particular Greek word, and the trial judge cut the questioning off.

44

Q      What does the word malaka mean?

THE COURT:           Irrelevant. He will not answer the question. It's withdrawn. Court won't allow him to answer that.

[HUSBAND]:           Can I make an offer of proof?

THE COURT:           Nope. Move on. And let's not get into kidnapping either. He's the grandfather.

[HUSBAND]:           Judge, I'm going to have to ask the question. I mean, it's a highly inappropriate action for any person to take, regardless of familial relationship, to take a child away from another -- a parent during the middle of a visit.

THE COURT:           Then make complaints with the juvenile authorities. This has nothing to do with custodial [sic] situation here. I'm trying to determine custody.

[HUSBAND]:           What does that reinforce to a child? Does that not reinforce to a child to show disrespect to the parent? Does it not reinforce to a child that if you're -- whatever you are, just run away, just run away. Does it not reinforce that?

THE COURT:           No, sir, it does not. I don't have a clue what you're talking about and I have not most of the day. So you seem to want to -- go ahead. Make it quick.

Dimitrios testified that his daughter asked him "to go pick up [N.F.] and drive away to take [the child] away from" Husband. Husband asked whether Dimitrios meant Wife, and the trial court interrupted, stating, "Yes, don't beat it. It's done and your [child] has testified as to why."

45

When Husband tried to continue his examination as to what happened next, the trial court again interrupted.

| | |
|---|---|
| THE COURT: | He's admitted it. Stop it. He's already said he did it. All the questions have been answered. |
| [HUSBAND]: | Judge, the rest of the story-- |
| THE COURT: | I know. You claim he hit you and you had to wear a sling and your son has testified in counseling that you made the whole thing up. |
| [HUSBAND]: | Right there. Judge. |
| THE COURT: | I'm sorry, your son said you made the whole thing up. It's in the file in the counseling records that you have already put in there. I have already read all that. |

*Testimony by a movie theatre manager, Ben Michel*

Husband questioned Michel about what happened on a particular evening at the theater involving the parties and the children. When Husband concluded his direct examination, the following transpired.

| | |
|---|---|
| [HUSBAND]: | Nothing further. |
| [WIFE'S COUNSEL]: | Judge -- |
| THE COURT: | This witness may be excused. |
| [WIFE'S COUNSEL]: | Really. Okay. It was a good story. |
| THE COURT: | I don't even know where that came from. That's the first I have heard of it. |
| [HUSBAND]: | It was a good story when I read your pleadings, too. |
| THE COURT: | That's all right. Don't worry about it. |

46

*Testimony by Husband's mother, Ila Jean Farris*

Husband offered a copy of an email Ila Jean had received into evidence, and although the trial judge admitted the email, she stated that she would "give it no weight" because the email dated to 2006. The following exchange then occurred:

| | |
|---|---|
| [HUSBAND]: | Judge, I'm disappointed that you continue to prejudge the facts and have already ruled this case. |
| THE COURT: | Oh, yeah, well, fine. I have listened to you whine all day. That's Exhibit Number 14. I will review it and take it for what it's worth. I will note that it's from November 2006. |

When Ila Jean confirmed that Wife had "carr[ied] through on the promise" to keep the grandmother from seeing the children, Wife's counsel objected.

| | |
|---|---|
| [WIFE'S COUNSEL]: | Objection. |
| THE COURT: | You start talking about from the time of the divorce. I don't care about this because you were party to it. You want to put everything at your [sic] door step. This is your mother. If she couldn't see that she saw the grandchildren, I put that at your doorstep, not hers. So you cut your own throat with that, Buddy. |
| [HUSBAND]: | I didn't condone it. You're assuming facts that aren't in evidence, Your Honor. |
| THE COURT: | I see a 2006 email. I will read it. Now, let's move on and talk about the children. |

Husband next attempted to question Ila Jean about a letter purportedly written by one of the children when the trial court interrupted again.

Q      This is a letter that [N.F.] wrote as to what happened that weekend.

47

| | |
|---|---|
| THE COURT: | I've seen it. It's in the file, so let's just admit it and move on. |
| THE WITNESS: | May I respond to the out and out lies, Your Honor? |
| THE COURT: | No, you may not. |
| [HUSBAND]: | Judge, I would like to make an offer of proof. I think we have the legal right to address this letter. |
| THE COURT: | It's written to you. It's not written to her. She is the witness. [Eventually, the trial court instructed Husband to "[p]roceed" and he went on with questions about the letter.] |

Later, the trial judge made the following inquiry of Husband:

| | |
|---|---|
| THE COURT: | How much longer do you have? I can't imagine that you could go through any more visits. I mean, you're basically showing you're not able to handle your children during your visitation and I got it. And you're trying to blame it on the mother, I got it. Your relationship has deteriorated, I got it. This stuff is already in the file. |
| [HUSBAND]: | It's inaccurate to blame it on me, Judge, and you're prejudging this case. You have ruled this case -- in fact, I think you ruled it before we started. |
| THE COURT: | This stuff was in there before we started. |
| [HUSBAND]: | Well, then, you saw it and you ruled it this morning before we started at 9:00. |
| THE COURT: | You put it in there. It's all stuff you put in the file alleging all kinds of odd things. So I have reviewed what you have put in the file and you just keep |

48

moving on. And again, I don't need --
I'm not going to listen to every visit you
ever had with your children and how
they went bad.

As Wife's counsel was about to begin to question Husband's mother, the trial judge

advised Wife's counsel about any need for cross-examination.

[HUSBAND]:            Tender the witness.

[WIFE'S COUNSEL]:     Oh, good. I really will keep this short.
                      I know you don't need it.

THE COURT:            This is grandma. She loves her
                      grandkids, you know.

[WIFE'S COUNSEL]:     But she says such good stuff.

THE COURT:            I know. But I would let it go. It's just
                      like when grandpa was on the stand, I
                      loved him. He gave the perfect answer.
                      She has done the best she can to give
                      good answers. I'm weighing the fact
                      that he's the grandpa and she is the
                      grandma. I know you love your
                      grandchildren.

*Testimony by Husband's girlfriend, Sindy Kimmis*

Husband questioned Kimmis about an occasion when Wife had not arrived to pick

up the children. Kimmis recalled that Husband "said that [he was] going to contact the

police to do a wellness check" on Wife. The trial judge then interjected with her own

question.

Q      Did I threaten to have them [the children] arrested that night?

A      Of course not.

THE COURT:            He was calling the police again? That
                      seems to be his favorite little card. He
                      was calling the police?

49

| | |
|---|---|
| THE WITNESS: | He contacted the police.  He said he was going to do a wellness check.  He told them that. |

As the examination of Kimmis went on, the trial court inquired about whether some of the issues addressed in her testimony had been raised by the pleadings, then turned to the significance of some of the events.

| | |
|---|---|
| THE COURT: | . . . .  We've been over and over and over again about all these little incidents.  It's enough.  Obviously, you do not have any control of your children when they are in your custody.  You have produced that evidence yourself.  The record is replete with that that you cannot control your children.  So now. |
| [HUSBAND]: | Judge, that's not the case and I'm concerned. |
| THE COURT: | I am the judge.  Guess what?  I get to decide that and I have decided it. |
| [HUSBAND]: | I know you did.  I think you decided early this morning. |
| THE COURT: | Yeah, right, whatever. . . . |

After Kimmis's testimony, the trial court stated, "Let me talk to you two.  I know you're down to the last witness."  The trial court then stated findings and opinions, and commented on the effect of any potential forthcoming testimony by Husband about the children.

| | |
|---|---|
| [THE COURT:] . . . . | |
| | . . . .  I believe that he's alienated himself from his own children by his conduct, which is, as a mother of three and grandmother of nine, is just off the charts.  It just shows someone who |

50

really hasn't had a long and extensive background towards those children.

Sure, they got along with him as long as mom was taking care of things for him, but the bottom line is you're not qualified to do it on your own. I'm finding that. I am not changing the [temporary] custody order. There is no evidence you can put on that hasn't already been put on at least twice, maybe three, maybe four times that would change that for me.

. . . .

. . . . My legal determination as a judge in this case is all you wanted to do is keep sticking it into her. And you no more wanted this case to be resolved because you had this perverse idea that if you can keep it going, you can keep attacking her.

So the bottom line is I find you're the one at fault in this case. I find you're the one that's causing problems with your children, and I have looked at everything in this file. I have read it all.

And in most of the stuff we saw today is you belly-aching earlier just like now, "Oh, my kids don't love me." Well of course they don't. You act like an idiot around them. Of course they don't like you. Just all there is to it. It's on your doorstep.

I think you're a full-blown narcissist. You're never going to accept what I'm saying so I'm wasting my breath. But the bottom line is it all revolves around [Husband] always, and that's not the way you raise children. It has to revolve around them.

51

. . . . And until you get your act together, you're not going to have any contact with your children. . . .

    . . . .

I think the current visitation plan, they don't want to comply with it. I mean, and I don't -- that's why I can't put this at [Wife's] doorstep. The children don't want to. And they -- you have articulate, intelligent children and they are not having anyone pull the wool over their eyes. They know what they feel toward you and it's not because their mother has forced that down their throat. If you want to know, the only bad words they have heard said by anyone is you calling your wife a cunt.

[HUSBAND]: Never happened, Judge. Never happened.

THE COURT: Well, I'm sorry, your children say it did.

[HUSBAND]: She put it in their head. She put it in their head. You haven't even heard my testimony.

THE COURT: Well, fine. I've heard all the "put in your head." You know what, when you go to the source and you look at your pleadings, your arrogance is beyond, as I already said today, anything I've ever seen. Your idea [sic] that through this entire proceeding for 18 months.

[HUSBAND]: Judge, she is the one who violated Court Order after Court Order, and yet I'm at fault for bringing that to your attention?

THE COURT:                          This is my finding.  I'm not changing custody.  You can take the stand and testify.  Only way I would change it would be to lessen what you're already receiving.

[HUSBAND]:                          So my testimony won't matter to you?

THE COURT:                          You can take the stand and testify, but you better come up with something other than this -- this garbage parental -- I have listened and listened to how bad the children are and all that has convinced me is there no way you can take those children because they can't stand being with you.  Your evidence.  Not hers.

                                    You know, you're going -- how many times have you threatened to take these kids to the police?  That's not the way you raise kids.  You handle it yourself.  So bottom line is no, your testimony probably couldn't make any difference but I'm not going to cut you off if you want to testify.

[HUSBAND]:                          I'd like to testify.

THE COURT:                          I'm tired of this.

[HUSBAND]:                          I'd like to testify, Your Honor.  And I would like you to have an open mind about my testimony.

THE COURT:                          I know exactly what you're going to say and I have probably heard it already three times today anyway.

*Testimony by Husband regarding child-related issues*[14]

During Husband's testimony, the trial judge repeated that her previously announced decision was final.

THE COURT: Let's get these exhibits marked. If you'll go over there and stick from 46 through 56 on each one of them and explain what they are so it will be in the record and we know what they are. Then I've got all these exhibits -- you want me to just take all these with me and then enter my order? How do you want to do that?

I've already told you what I'm going to do. I can tell you right now your relief is at the next level. That's why I'm letting you mark all these so you can take them up there and explain to them why my decision was wrong.

[HUSBAND]: So you've ruled?

THE COURT: I've ruled. You heard me. I'm letting you put your exhibits in.

. . . .

THE COURT: You want me to change custody to you, which I will never do. You don't want anything to work to where we might get a plan together. You don't want to propose anything short of everything and you're not getting everything.

You are -- that's it. So you're saying like fine, if I can't have everything, I want nothing, and that's where we're at right now.

---

[14] The transcript index does not identify Husband as a witness, and it does not indicate that Husband takes the stand or is re-sworn. Husband simply begins offering evidence to the court after announcing his decision to testify.

|  |  | So the bottom line is I'm not encouraging anything.  You're refusing. You're absolutely refusing to try and work out something.  This horrible rift you have with your children that I find you as my findings and the law of this case is going to be that you caused the rift. |
|  |  | Just start telling what those things are, mark them in groups.  Some other court is going to have to -- |
| [HUSBAND]: |  | Do you want me to start? |
| THE COURT: |  | Yes, sir, I do. |

Before Husband had finished offering exhibits, the trial court suddenly announced that court was adjourned and "I don't want anymore [sic] exhibits."  Husband persuaded the trial court to accept some additional exhibits.  As Husband described the content of some of the exhibits, the trial court stated, "You won't listen that I don't care, but go ahead." Husband was not given the opportunity to complete his testimony related to child custody, and neither party was offered the opportunity to make a closing argument.